IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30619

_____

VINCENT ARTUSO,

Petitioner-Appellant,

versus

KEITH HALL, Warden,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

January 22, 1996

Before HIGGINBOTHAM AND DUHÉ, Circuit Judges, and SCHWARZER*, District Judge.

HIGGINBOTHAM, Circuit Judge:

In this case, a federal prisoner alleges that regulations of the United States Parole Commission (USPC) are inconsistent with a congressional statute.  We agree and grant the prisoner's petition for a writ of habeas corpus under 28 U.S.C. § 2255.


I

This case concerns a type of post-release supervision, special parole, that did not survive the advent of the sentencing guidelines.  Under pre-guidelines law, certain offenses triggered

_____

* District Judge of the Northern District of California, sitting by designation.

a requirement that the defendant receive a term of special parole. This special parole term followed any imprisonment or normal parole and included conditions similar to normal parole conditions. If a defendant violated a special parole condition, the USPC could return the parolee to prison for a time period less than or equal to the length of the special parole term calculated without credit for street time already served. For example, suppose a defendant received a sentence of 15 years imprisonment, 7 years normal parole, and 5 years special parole. After 22 years, the defendant would begin serving his special parole time on the street. If at year 26 month 11 the defendant violated a condition of special parole, the USPC could reimprison the defendant for up to five years. In such a case, the USPC could grant the defendant no credit for the four years 11 months of special parole time spent on the street.

The issue in this case is whether the USPC, after re-incarcerating a defendant for a violation of a condition of special parole for a time less than the full length of the special parole term, may impose a second term of special parole. In the example outlined above, suppose the felon violated his special parole term at year 26 month 11, and the USPC decided to impose only three years re-incarceration instead of the maximum five-year term. The issue is whether the USPC also may impose a two-year term of special parole to begin upon the release from the second period of incarceration.

The facts in this case are not in dispute. A jury in the district court for the Southern District of New York convicted Vincent Artuso of certain drug-related offenses. Artuso received three separate sentences of 5 years imprisonment plus 5 years of special parole, such sentences to run concurrently. The Second Circuit affirmed Artuso's conviction.

In March, 1980, Artuso began serving his sentence. After spending 20 months in prison, the USPC released Artuso to normal parole, and Artuso served the remaining 40 months of his five-year term of "imprisonment" on the streets without incident. In March, 1985, Artuso began serving his five-year term of special parole; Artuso was scheduled to be released from the jurisdiction of the USPC in 1990.

In November, 1988, the USPC issued a parole violation warrant alleging that Artuso had violated the conditions of his special parole by associating with various persons involved in criminal activity, including Genovese crime family head John Gotti. The USPC revoked Artuso's special parole, ordered him to spend 18 months in prison, credited none of his previously served special parole time, and imposed a second special parole term of 42 months to begin upon completion of the 18 months incarceration. In May of 1990, Artuso was released from prison and began serving his second special parole term on the streets.

In October, 1993, a grand jury returned an indictment charging Artuso with extortion and with association with persons engaged in

criminal activity. The FBI arrested Artuso, and shortly thereafter the USPC issued a detainer based upon the indictment. Artuso and the United States plea bargained. Artuso agreed to waive his right to a hearing before the USPC and to admit to the USPC that he had associated with persons engaged in criminal activity. The agreement recited that the USPC's Guidelines provided for a sentence of 12-16 months for a violation of this nature, but made no mention of an additional term of special parole. In return, the United States successfully moved to dismiss the indictment against Artuso with prejudice.

The USPC revoked Artuso's second special parole term, ordered that he remain incarcerated until December of 1995, credited none of his previous special parole time spent on the street, and imposed a third term of special parole scheduled to terminate in May, 1997.

In March of 1995, Artuso filed a petition for a writ of habeas corpus seeking release on the ground that the USPC lacked statutory authority to impose a second term of special parole after revoking a first special parole term. A magistrate judge recommended that the application be denied, and the district court adopted the recommendation.

From the record it appears that Artuso has been released from incarceration and is currently serving his third term of special parole.

III

The United States' first argument is that we need not reach the merits of this case because Artuso agreed to abide by the USPC's choice of punishment in his plea agreement. Citing United States v. Bethany, 489 F.2d 91, 93 (5th Cir. 1974), the government argues that the plea agreement is binding upon Artuso, that he received the benefit of the bargain in the form of a dismissal with prejudice of the second indictment, and that he cannot now be heard to challenge the USPC's authority to revoke his second term of special parole.

While we agree with the United States that the plea agreement is binding on Artuso, we find no statement in that agreement that Artuso waived his ability to challenge the USPC's authority to impose multiple terms of special parole in a habeas proceeding. Artuso did agree to waive his right to a hearing before the USPC and to admit that he had violated the condition of his parole prohibiting him from associating with persons engaged in criminal activity. But the agreement makes no mention of Artuso's right to challenge the USPC's authority to impose a third special parole term after revoking a second.

To the extent that Artuso's habeas action sought relief from the USPC's latest order that Artuso be incarcerated until December of 1995, the United States' position might have had merit. The plea agreement recited that "[a]ccording to the [USPC's] guidelines, the defendant may be sentenced to a range of imprisonment of 12-16 months," suggesting that the parties to this

5

contract contemplated that Artuso would spend some additional time in prison. The difficulty is that Artuso's third term of incarceration has now expired, and thus the only issue remaining before this court is the validity of the USPC's imposition of a third term of special parole. Nothing in the plea agreement suggests that Artuso and the United States had any understanding regarding a second special parole term. Accordingly, we hold that Artuso has not bargained away his right to seek habeas relief in this action.


IV

Relying on United States v. Holmes, 954 F.2d 270 (5th Cir. 1992), Artuso argues that the USPC lacked statutory authority to impose a second period of special parole after it had revoked a first special parole term. We agree.

Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984), governs our decision in this case. 21 U.S.C. § 841(c), repealed, Pub. L. 98-473, Title II, § 224(a)(2), granted the USPC the authority to impose special parole. The USPC promulgated regulations under this statute allowing it to impose a second term of special parole after revoking a parolee's first term of special parole and requiring the parolee to spend additional time incarcerated. 28 C.F.R. §§ 2.52(b), 2.57(c). The USPC is the agency charged with administering former section 841(c). Under Chevron, this court may only inquire whether Congress's intent in

passing former section 841(c) was clear and, if not, whether the USPC's interpretation was reasonable.

We faced a nearly identical question in the context of a nearly identical statute in <u>United States v. Holmes</u>, 954 F.2d 270 (5th Cir. 1992). The dispute in <u>Holmes</u> centered on whether 18 U.S.C. § 3583(e)(3) allowed courts to impose a second term of supervised release after revoking an initial term of supervised release. Section 3583(e)(3) provided that a court could "revoke a term of supervised release and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on post-release supervision." In <u>Holmes</u>, we held that the word "revoke" meant to "cancel or rescind," and therefore that section 3583(e)(3) provided courts with no authority to impose a second period of supervised release after revoking a first term of supervised release. Since <u>Holmes</u>, the text of section 3853(e)(3) has remained unchanged, but Congress has reversed <u>Holmes</u> by enacting 18 U.S.C. § 3583(h), which clarifies that a court may impose another term of supervised release after each violation of a condition of supervised release.

The reasoning of <u>Holmes</u> controls our decision in this case. Former section 841(c) provided,

> A special parole term imposed under this section . . . may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the new term of imprisonment.

7

The language of former section 841(c) is nearly identical to that of section 3583(e)(3). See United States v. O'Neil, 11 F.3d 292, 299 (1st Cir. 1993) (noting "the obvious similarities in language, structure, and substance between section 841(c) and section 3583(e)(3)" in a decision disagreeing with Holmes). In particular, former section 841(c) and section 3853(e)(3) both used the term "revoke" in identical contexts to mean cancel or rescind. Accordingly, when the USPC cancels or rescinds a term of special parole, nothing in former section 841(c) provides it with additional authority to impose a second term. We hold that Holmes governs this case and compels the conclusion that the USPC's regulations contradict the plain language of former section 841(c), our "first and best resort" in the search for congressional intent. Holmes, 954 F.2d at 272.

We acknowledge that our decision today creates a circuit split. In USPC v. Williams, 54 F.3d 820 (D.C. Cir. 1995), the court upheld 28 C.F.R. §§ 2.52(b), 2.57(c) as a reasonable interpretation of former section 841(c). The D.C. Circuit found the phrase "new term of imprisonment" in former section 841(c) sufficiently ambiguous to allow the USPC to interpret these words as allowing a term of actual incarceration plus time spent on the street in the form of special parole. The Williams court also relied on the presumption that parole is available unless expressly precluded. Williams is inconsistent with Holmes. Section 3853(e)(3) includes the phrase "to serve in prison," and in Holmes we found no ambiguity in this phrase sufficient to alter our

8

decision. No relevant difference distinguishes the phrase "to serve in prison" and "new term of imprisonment" for purposes of whether either contemplates a second period of conditional liberty. While we agree that the presumption in favor of parole can be useful in construing an ambiguous statute, we find nothing ambiguous in former section 841(c).

Two other circuits have addressed in dictum the permissibility of imposing a second special parole term after an initial revocation; both foreshadowed the result reached in Williams. See O'Neil, 11 F.3d at 299; United States v. Gozlon-Peretz, 894 F.2d 1402, 1405 n.5 (3d Cir. 1990), amended, 910 F.2d 1152 (3d Cir. 1990), aff'd, 498 U.S. 395 (1991). These cases have no authoritative value. The O'Neil court used the existence of the USPC special parole regulations, together with the similarity of section 841(c) to 3853(e)(3), to support a disagreement with Holmes and a conclusion that section 3853(e)(3) allowed reimposition of supervised release. The O'Neil court did not consider the possibility that the USPC regulations might themselves be invalid under step one of Chevron. Gozlon-Peretz's discussion of the issue consisted of a bald single-sentence dictum supported by no citation.

Finally, we find no conflict between our decision today and that in Munguia v. USPC, 871 F.2d 517, 521 (5th Cir. 1989), cert. denied, 493 U.S. 856 (1989). In Munguia, we relied on the USPC regulations at issue in this case only to show that they

9

"channel[ed] special parolees through" an alternative regulation. 871 F.2d 521.

The district court's opinion is reversed, and this case is remanded with instructions that the district court order that Artuso be released from his third term of special parole.