**Joe Calderon CAMPOS, Petitioner,**

v.

**UNITED STATES PAROLE COMMISSION, Respondent.**

**No. EP–96–CA–79–F.**

United States District Court, W.D. Texas, El Paso Division.

July 25, 1996.

---

Joe Calderon Campos, Anthony, NM, Pro Se.

Stephen G. Jurecky, Asst. U.S. Atty., El Paso, TX, for Respondent.

## ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION WITH MODIFICATIONS AND DENYING PETITIONER'S REQUEST FOR RELIEF PURSUANT TO 28 U.S.C. § 2241

FURGESON, District Judge.

On this date, the Court considered the United States Magistrate Judge Richard Mesa's Report and Recommendation filed on May 10, 1996, regarding this petition for habeas corpus filed pursuant to 28 U.S.C. § 2241.

### I. PETITIONER'S CLAIMS AND PROCEDURAL HISTORY

The facts of this case are best set forth in the Magistrate Judge's Report and Recommendation and are incorporated herein. On September 15, 1976, in the Central District of California, Joe Calderon Campos ("Petitioner") was convicted by a jury of multiple counts of federal drug offenses involving trafficking in heroin. Petitioner was sentenced on September 27, 1976, to a term of ten years of imprisonment, to be followed by a 25-year special parole term. Petitioner was released on parole on November 8, 1981. Petitioner was scheduled to remain on regular parole until October 8, 1986, when he would begin serving his 25-year special parole term.

About seven months later, on June 14, 1982, a regular parole violator warrant issued for Petitioner as a result of numerous violations of his conditions of parole, most of which revolved around drug abuse. Petitioner was arrested on July 21, 1982, and returned to custody. The United States Parole Commission ("the Commission" or "Respondent") ordered that Petitioner's parole be revoked, that none of the time spent on parole be credited and that he continue to a presumptive reparole date of June 21, 1984. On September 28, 1982, Petitioner escaped from F.P.C. Lompoc. He was arrested on

November 17, 1982. As a result, Petitioner's presumptive reparole date of June 21, 1984, was rescinded and he was continued to a presumptive reparole date of July 10, 1985.

On April 5, 1985, Petitioner was found guilty of using narcotics while in prison. His presumptive reparole date of July 10, 1985 was retarded until September 6, 1985. Petitioner was reparoled on September 6, 1985. He was scheduled to remain on regular parole until January 31, 1988, when he would begin serving his 25–year special parole term. About three months after he was reparoled, Petitioner violated the conditions of his reparole by using drugs and failing to report for drug testing. On January 8, 1986, he was arrested on a parole violator warrant and returned to custody. Following a parole revocation hearing on March 26, 1986, the Commission revoked Petitioner's reparole, ordered all time spent on reparole credited, and ordered Petitioner to continue to expiration of his sentence.

On June 5, 1987, Petitioner was mandatorily released from custody, having served his original ten-year term of imprisonment, less 244 days of statutory and extra good time deductions. He was to remain on mandatory release supervision until August 8, 1987, when he would begin serving his 25–year special parole term. However, on August 3, 1987, a parole violator's warrant was issued for Petitioner charging several violations of the conditions of his mandatory release supervision. Petitioner was not arrested until May 12, 1988. Following a revocation hearing on August 3, 1988, the Commission ordered Petitioner's mandatory release revoked, that the time spent on mandatory release supervision from date of release until June 26, 1987, be credited and that Petitioner continue until expiration.

Petitioner was released on September 30, 1988, to begin serving his 25–year special parole term, scheduled to expire on September 29, 2013. A special parole violator warrant was issued on November 21, 1988, when Petitioner failed to report to his probation officer. Petitioner was arrested on January 10, 1989, and returned to custody. On May 11, 1989, following a revocation hearing, Petitioner's special parole was revoked, none of

the time spent on special parole was credited, and Petitioner was continued to a presumptive reparole date of January 9, 1991, after service of 24 months for violating the conditions his special parole.

Petitioner was released for a second time to his special parole term on January 9, 1991. His special parole term was scheduled to expire on January 9, 2014. A special parole violator warrant was issued on April 26, 1991, charging Petitioner with numerous violations of the conditions of his release, related to drug abuse. Petitioner was arrested and returned to custody on May 6, 1991. Following a revocation hearing, the Commission ordered that Petitioner's special parole be revoked for the second time, with none of the spent on special parole credited, that Petitioner continue to a presumptive parole date of September 6, 1992, after service of 16 months.

On September 6, 1992, Petitioner was released for the third time to his special parole term, which was scheduled to expire on May 3, 2014. A special parole violator's warrant was issued for Petitioner on March 4, 1993, as a result of violations of the conditions of his special parole. Following a revocation hearing, the Commission ordered Petitioner's special parole revoked for the third time, with none of the time spent on special parole to be credited, that Petitioner continue to a presumptive parole date of March 16, 1995, after service of 24 months.

In January of 1995, Petitioner tested positive for drug use while a resident at a BOP halfway house. Prior to a scheduled meeting to discuss the drug test results, Petitioner escaped from custody. A disciplinary hearing was held in absentia, following which the Commission ordered Petitioner's parole date of March 16, 1995 retarded until a rescission hearing could be held to determine whether a deferral of his parole date was warranted based on the charges of drug use and escape. Petitioner was returned to federal custody on May 7, 1995. He was received at F.C.I. La Tuna on September 21, 1995. The Commission has recently reviewed Petitioner's case and a recalculation of his sentence by the Bureau of Prisons is forthcoming. The Commission has not yet made a determination

regarding his most recent alleged violations and no new parole date has been set.

On March 20, 1996, the Respondent requested a stay of this petition for writ of habeas corpus pending resolution of a petition for rehearing and a suggestion for rehearing en banc filed following the recent Fifth Circuit decision in *Artuso v. Hall.* 74 F.3d 68 (5th Cir.1996). The petition for rehearing and suggestion for rehearing en banc were denied on April 1, 1996. The Magistrate Judge issued his report on May 10, 1996, recommending that Petitioner's writ be granted. Respondent's objections followed.

## II.  STANDARD OF REVIEW

■■■ When a party objects to a Findings of Fact and Recommendations, as has been done here, the Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). *See also Longmire v. Guste,* 921 F.2d 620, 623 (5th Cir.1991) (party is "entitled to a de novo review by an Article III judge as to those issues to which an objection is made"). Such a review means that the Court will examine the entire record, and will make an independent assessment of the law. The Court need not, however, consider objections that are frivolous, conclusive or general in nature. *Battle v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir.1987).

## III.  RESPONDENT'S RESPONSE

Respondent's objections to the Magistrate Judge's report focus largely upon the applicability of *Artuso v. Hall* to the facts of this case. 74 F.3d 68, 69–70 (5th Cir.1996). In *Artuso,* Respondent contends that the 5 year special parole term, once it had been converted to a 5 year sentence, had already expired by the time the Fifth Circuit decided the case. Here, the 25 year special parole term, when converted to a 25 year sentence, has not expired. Additionally, Respondent maintains that in *Artuso,* the Fifth Circuit rejected the Commission's authority to impose a second term of special parole after the prisoner had been revoked on his first. In this case, Respondent argues that Petitioner has

simply been reparoled from his original special parole term and that no violation of the Fifth Circuit's holding in *Artusoo* has occurred.

Respondent also argues that while it may not have the authority to impose a new special parole term in this case, it does have the authority to grant and revoke regular parole after the first special parole term has been revoked. Respondent refers to 18 U.S.C. §§ 4207 and 4210(b)(2) which govern its authority to revoke a prisoner's parole and obligate him to complete the remainder of the original sentence or some other term as imposed by the court. Admittedly, the law does not explicitly permit the Commission to use a parole mechanism to decide how much of Petitioner's remaining special parole sentence he should serve. Respondent adds, though, that it has "no other statutory means to carry out this function."

Indeed, Respondent argues that if it does not have any authority to continue supervision after an initial violation by a prisoner on special parole, its only future option would be to require the prisoner to serve the entire special parole sentence with no opportunity for parole. That is a particularly compelling argument in this case. Rather than requiring that Petitioner be incarcerated for shorter periods of time on each parole or special parole violation, thereby giving him every possible opportunity to rehabilitate, the Magistrate Judge's decision will likely encourage the Commission to keep future petitioners in jail for a much longer period of time after the first violation of special parole.

Respondent argues, therefore, that when Petitioner was returned as a special parole violator the first time, he was eligible for regular parole. According to Respondent, other Circuit Courts, including the Fifth, have adopted this interpretation, recognizing that a reparole from a special parole violator term is authorized. Respondent adds that *Artuso* did not hold that a prisoner is ineligible for another grant of parole within the parameters of the new prison term ordered by the Commission.

Alternatively, Respondent maintains that if the Court adopts the Magistrate Judge's de-

cision, it has effectively given the Commission the authority to impose a new sentence for an amount less than the amount of special parole to which Petitioner was sentenced by the trial court. In this instance, the trial court sentenced Petitioner to 25 years of special parole. Upon violating the conditions of his special parole, the Commission determined that Petitioner would serve 24 months for his special parole violation. If, upon his release from that 24 month incarceration, he is not released to a regular parole term, but simply released with no conditions, the Commission will have effectively vacated his 25 year special parole sentence and imposed a new two year sentence in its place.

In this vein, Respondent has also raised several issues devolving from its possible authority to truncate Petitioner's sentence, namely the applicability of "good time" credits to Petitioner's sentence and the possibility of parole from such a sentence. Because of the Court's decision discussed infra, these issues need not be addressed.

### IV. ANALYSIS

#### A. The Second and Third Special Parole Terms

■ Respondent's objections to the contrary, the Fifth Circuit's decision in *Artuso* was not based upon the expiration date of the prisoner's first special parole sentence. Rather, the Court of Appeals was quite clear in its assessment of the regulations promulgated by the Commission under 21 U.S.C. § 841(c) regarding the imposition of a second parole. *Artuso*, 74 F.3d at 71. The Court held that 28 C.F.R. §§ 2.52(b) and 2.57(c) were not reasonable interpretations of former section 841(c). *Id.* More pertinent to this case, Respondent did not have the authority to impose a second term of special parole after revoking a parolee's first term of special parole. *Id.*

In its objections, Respondent has attempted to characterize Petitioner's second and third special parole violator warrants as something other than a new special parole

term. Indeed, Respondent seems to suggest that it used the regular parole mechanism to carry out its supervisory function. As the Magistrate Judge indicated, the facts suggest otherwise. When Petitioner was arrested and returned to custody on May 6, 1991, Respondent ordered that Petitioner's special parole be revoked for the second time. No time spent on "parole" was credited toward the service of the sentence. Thus, following his release on September 6, 1992, a new expiration date of May 3, 2014, was set for his special parole term. When Petitioner was arrested and returned to custody on March 4, 1993, Respondent ordered that Petitioner's special parole be revoked for the third time. Again, no time spent on "parole" was credited toward the service of the sentence.[1]

Respondent's failure to credit Petitioner with street time following these two "parole" violations indicates that a second and third special parole term had been imposed. 28 C.F.R. § 2.52(c)(2). Respondent had the authority to revoke Petitioner's special parole term only once, namely on May 11, 1989, when he failed to report to his probation officer. Pursuant to 28 C.F.R. § 252(c)(2), Petitioner forfeited the street time he served on special parole from September 30, 1988, to May 11, 1989. Consequently, Petitioner's special parole term of 25 years, which was scheduled to have expired on September 29, 2013, was properly rescheduled to expire on January 9, 2014.

Based upon the Fifth Circuit's recent decision in *Artuso*, however, Respondent did not have the authority to impose a second special parole term after it had revoked the first special parole term, nor did not have the authority to impose a third special parole term after it had revoked the second special parole term. Rather, when Petitioner was released on January 9, 1991, from imprisonment as a result of violating the terms of his special parole, he was no longer on a special parole term. His sentence was due to expire on January 9, 2014. When Petitioner was arrested for violating conditions of his re-

---

1. The Commission has yet to establish a new expiration date as a result of this parole violation.

lease on May 6, 1991, the expiration date of his 25 year sentence should not have changed. He should have been credited with the street time served between January 9, 1991, and May 6, 1991, just as a prisoner on regular parole would have been. No new term of special parole should have been imposed and no new expiration date for his sentence should have been established. Similarly, when Petitioner was arrested again for violating conditions of his release on March 4, 1993, the expiration date of his 25 year sentence, again, should not have changed. He should have been credited with the street time served between September 6, 1992, and March 4, 1993, as well.

While Respondent appears to concede the argument discussed above in its brief, it has nonetheless argued that the decision in *Artuso* is irreconcilable with an earlier Fifth Circuit decision in *Munguia v. United States Parole Comm'n.* 871 F.2d 517, 521 (5th Cir.), *cert. denied,* 493 U.S. 856, 110 S.Ct. 161, 107 L.Ed.2d 119 (1989). Respondent. notes that in *Munguia* the court upheld 28 C.F.R. § 2.57(c), whereas the court in *Artuso* held that this same regulation was not a reasonable interpretation of 21 U.S.C. § 841(c).

The Fifth Circuit has previously concluded, however, that no conflict exists between *Munguia* and *Artuso*. 74 F.3d at 72. The Court agrees and, in doing so, would note that no conflict exists between *Munguia* and this case either. As the *Artuso* court stated, *Munguia* relied on 28 C.F.R. § 2.57(c) only to the extent that individuals who violated terms of their special parole were "channel[led]" to a complimentary regulation dealing with the forfeiture of their street time. In this case, once Petitioner's special parole was revoked, a 25 year sentence was imposed per the decision of the California District Court. At that point, subsequent violations committed by the Petitioner were not governed by the rules of special parole. Thus, 28 C.F.R. § 257(c) no longer governed this case.

### B. Special Parole Converted to a Regular Parole Term

▮ Having concluded that Respondent could not have imposed a second or third special parole term upon Petitioner after his first special parole term was revoked, the question in this case concerns the nature of the remainder of the term imposed by the sentencing court, namely the 25 year special parole term which has now become a 25 year sentence. The Magistrate Judge concluded that there was no language in *Artuso* which suggested that Respondent may convert a special parole term into a regular parole term following revocation of a special parole term. Once Petitioner was released for the third time on September 6, 1992, Respondent no longer had authority to supervise him, much less detain him. Therefore, Petitioner's writ of habeas corpus should be granted.

The Magistrate Judge noted that the Court is bound to apply the law of this Circuit, and not the law as set forth in *Evans v. United States Parole Comm'n.,* a Seventh Circuit case. While this is unquestionably true, this Court is at liberty to consider the well reasoned opinion of another Circuit court, particularly when it has addressed an issue that has yet to be determined in this Circuit. The Court of Appeals in *Artuso* did not state that special parole could be converted to regular parole because it did not need to make such a holding in order to grant the petitioner's writ of habeas corpus. 74 F.2d at 71–72. Further, the Court has not found a Fifth Circuit case which has definitively addressed this issue.

The Seventh Circuit in *Evans* held that once a special parole is revoked, it is "replaced by a normal term of imprisonment." 78 F.3d at 265. "After the revocation, the [Petitioner] has a single, longer, but ordinary, term of imprisonment." *Id.* The Petitioner may be serve all of this term in prison, although the Commission is "free to award parole from that ... sentence." *Id.* The court in *Evans* even cited *Artuso* as being in accord with its holding that "the first revocation turns special parole into regular imprisonment, release from which is normal parole." *Id.* at 264.

Though *Artuso* does not address the special parole conversion issue, the rationale outlined above in *Evans* is consistent with *Artuso* and the Court will adopt that rationale in this case. Were the Court to rule otherwise, it would severely frustrate all fu-

ture adjudications under special parole. Adopting the Magistrate Judge's report in its entirety means Petitioner will be released unconditionally having served only 24 months for violating the terms of his special parole. The California District Court, however, sentenced Petitioner to 25 years if he violated the terms of his special parole. The Commission would have acted as a sentencing court in reducing Petitioner's sentence, something it does not have the authority to do. *Thorpe v. United States Parole Comm'n.*, 902 F.2d 291, 292 (5th Cir.), *cert. denied*, 498 U.S. 868, 111 S.Ct. 185, 112 L.Ed.2d 148 (1990).

By the same token, the Court sincerely doubts that the same individual should be incarcerated an extraordinarily long amount of time without parole for failing to report to his parole officer. In adopting the Magistrate Judge's recommendation, though, the Court terminates Respondent's jurisdiction over a prisoner after his special parole is revoked and a portion of the subsequent sentence is served in confinement. In the future, Respondent would be more likely to assess longer terms of confinement for a first-time special parole violator, since it would relinquish jurisdiction over that individual once his special parole is revoked.

Consequently, the Court concludes that when Petitioner's special parole term was revoked, the original 10 year term of imprisonment was increased by an additional 25 years. Respondent cannot impose a new special parole term upon revocation of the original special parole term. The expiration date of his sentence, January 9, 2014, as determined following the revocation of his special parole on May 11, 1989, must be reinstated. Respondent may grant Petitioner parole from his 25 year sentence pursuant to the rules for ordinary parole. Neither Respondent nor the Court, though, can reduce this sentence. Petitioner's motion for a writ of federal habeas corpus, therefore, should be denied.

## V. CONCLUSION

As required by 28 U.S.C. § 636(b)(1), the Court has conducted an independent review of the entire record and a de novo review of the matters raised by the objections. For the reasons set forth above, the Court concludes Respondent's objections are meritorious. The Court concludes that the Magistrate Judge's Report and Recommendation is an accurate statement of the facts. The Court further concludes that the Magistrate Judge's Report and Recommendation is a correct analysis of the law in all material respects, except upon the issue of the convertability of special parole into regular parole, as noted above.

Accordingly, it is ORDERED that the United States Magistrate Judge Richard Mesa's Report and Recommendation is ACCEPTED WITH MODIFICATIONS pursuant to 28 U.S.C. § 636(b)(1).

It is further ORDERED that Petitioner's Motion for Writ of Habeas Corpus be DENIED.

It is further ORDERED that Petitioner be recredited for the period of "street time" served from January 9, 1991 through May 6, 1991, the period of "street time" served from September 6, 1992, through March 16, 1993, and any other "street time" served by Petitioner since January 9, 1991.

It is further ORDERED that the expiration date of Petitioner's sentence is January 9, 2014, which is 25 years from the date of the execution of the warrant which revoked Petitioner's special parole term. Respondent reserves the discretion to award parole to Petitioner pursuant to the rules of ordinary parole.

All pending motions are DENIED AS MOOT.