**Hector MANSO, Petitioner,**

v.

**William PATRICK, et al., Respondents.**

No. 97–0071–Civ.

United States District Court,
S.D. Florida.

Sept. 9, 1997.

Ruben Oliva, Rojas Oliva Jones & Allen, Miami, FL, Daniel James Stanford, Stanford Law Office, Eunice, LA, for Petitioner.

David Cora, U.S. Atty.'s Office, Fort Lauderdale, FL, for Respondents.

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION OF JULY 21, 1997

LENARD, District Judge.

**THIS CAUSE** came before the Court on the Magistrate Judge's Report and Recommendations of July 21, 1997. The Court having considered the Report, and no objections having been filed, it is hereby

**ORDERED AND ADJUDGED** that the Recommendation of the Magistrate Judge is **ADOPTED IN FULL** as stated in the Report. Therefore, the Petition for Writ of Habeas Corpus is **DENIED.** All other pending motions are denied as moot and the Clerk is directed to close this case forthwith.

JOHNSON, United States Magistrate Judge.

### REPORT AND RECOMMENDATION

As amended August 18, 1997.

THIS CAUSE is before this Court on Petitioner's Petition for Writ of Habeas Corpus Pursuant to Title 28 U.S.C. 2241 (D.E. No. 1) and the Government's Response to Writ of Habeas Corpus (D.E. No. 7). This matter was referred to the undersigned United States Magistrate Judge by the Honorable Joan A. Lenard, United States District Judge for the Southern District of Florida and is now ripe for review.

### I. BACKGROUND

Petitioner, Hector Manso, is currently an inmate at the Federal Detention Center, Miami, Florida. Petitioner has been returned as a special parole violator to continue serving the remainder of a 1–year regular adult sentence followed by a 5–year special parole term imposed by the United States District Court for the Southern District of Mississippi on June 8, 1984. Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the execution of his sentence.

Petitioner argues that it was an unconditional release, which terminated the remainder of the 5–year sentence imposed by the Southern District of Mississippi. Petitioner argues that the Commission was without authority to continue to supervise him following his release on the ground that the statute creating special parole, 21 U.S.C. § 841(c) (1970), authorizes the Commission to impose "a term of imprisonment" but does not authorize a special parole violator to be reparoled. Therefore, Petitioner concludes, when he was released on parole after serving only two months on May 9, 1988, his 5–year special parole term expired.

### II. STANDARD OF REVIEW

Title 28 U.S.C. § 2255 sets forth the framework for reviewing a federal prisoner's sentence for the following four reasons:

(1) the sentence was imposed in violation of the Constitution of the United States,

(2) the court was without jurisdiction to impose such a sentence,

(3) the sentence was in excess of the maximum authorized by law, or

(4) the sentence is otherwise subject to collateral attack.

28 U.S.C. § 2255 (West 1994). Whether the district court has jurisdiction over a prisoner's claim under § 2255 is a question of law subject to plenary review. *Fernandez v. United States*, 941 F. 2d 1488, 1494 (11th Cir.1991). Sentences imposed within the limits of the applicable statute are insulated from review under 28 U.S.C. § 2255. *Id.; Kett v. United States*, 722 F.2d 687, 690 (11th Cir.1984); *Nelson v. United States*, 709 F.2d 39, 40 (11th Cir.1983).

### III. *LEGAL ANALYSIS*

The question for the Court is what was the nature of Petitioner's release on May 9, 1988, after he had spent two months in custody for violating the conditions of his 5–year special parole term.[1] The Commission argues that Petitioner's release was to return to the remainder of the special parole term (a reparole), as the Commission only has the authority to release prisoners on parole and has no sentencing authority or authority to modify the length of the sentence imposed by the court outside of the provisions for early termination of parole at 18 U.S.C. § 4211. The Commission further argues that it is a reasonable interpretation of the special parole statute that the reparole on May 9, 1988, was to the remainder of the 5–year special parole term imposed by the Southern District of Mississippi, and not to a regular parole on the ground that the Commission has no authority to change the nature of the sentence imposed by the sentencing court.

The special parole term statute provides, in its entirety:

A special parole term imposed under this section or § 845 of this title may be revoked if its terms and conditions are violat-

ed. In such circumstances, the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section or in § 845 of this title shall be in addition to, and not in lieu of, any other parole provided for by law.

21 U.S.C. § 841(c) (1970). The Commission promulgated several regulations based on what it believed was clear from the statute. 28 C.F.R. § § 2.52(b), 2.57(c) & (d). The Commission concluded that the special parole term imposed by a sentencing court remains intact following revocation of the term, just as a regular prison sentence remains intact if regular parole is revoked. The Commission also concluded that a special parole violator receives no credit toward the satisfaction of the special parole term for the time spent on special parole as specifically required by the statute. Further, the Commission concluded that a special parole violator, like a regular parole violator, is eligible to be reparoled from the violator term. The Commission does not view this reparole decision as the equivalent of the imposition of a determinate sentence.

There are two divergent views that circuit courts have taken recently with regard to what happens when a special parole term is revoked. Petitioner argues that there is a third view. He argues that the Commission may "resentence" him to a term of imprisonment that is less than 5 years and that upon his completion of that new two–month "sentence" that he has satisfied the 5–year term imposed by the sentencing court.

The first view, and until recently, the only view, is that a special parole term is a form of parole[2] The interpretation of § 841(c) un-

---

1. Petitioner escaped from the custody of the Bureau of Prisons following his subsequent return to custody and remained in escape status for more than five and a half years. Petitioner received no sentence credit for the time spent in escape status between December 16, 1990 and June 18, 1996.

2. The Commission has the same authority to act with respect to special parolees as it does with regular parolees. *See, generally, Battle v. United States Parole Com'n*, 834 F.2d 419, 420 (5th Cir.1987); *Cortinas v. United States Parole Com'n*, 938 F.2d 43, 47 (5th Cir.1991); Cf. *Tijeri-*

der the first view is that once special parole is revoked, the special parolee will not receive credit for the time spent on special parole, but will receive credit for any time spent in custody on a violator term. This first view also holds that a special parole violator may be reparoled *as a special parolee* to continue serving the remainder of his special parole term. The District of Columbia Circuit and the Eighth Circuit have accepted this view. *See United States Parole Com'n v. Williams,* 54 F.3d 820, 822–23 (D.C.Cir.1995)[hereinafter *"Williams"*]; *Billis v. United States,* 83 F.3d 209 (8th Cir. 1996).[3] This first view was believed to be the view of the Fifth Circuit until Artuso v. Hall, 74 F.3d 68 (5th Cir.1996)(Higginbotham, J.)[hereinafter "Artuso"] was decided. *Munguia v. United States Parole Com'n,* 871 F.2d 517 (5th Cir.), *cert. denied,* 493 U.S. 856, 110 S.Ct. 161, 107 L.Ed.2d 119 (1989)[hereinafter *"Munguia"*] At least one district court in the Eleventh Circuit has adopted this approach in an unpublished decision that followed the *Williams* approach. *Lyndon Crowder v. United States Parole Com'n,* slip op. no. 1:95–CV–2373A–JEC (N.D.Ga. Jan. 29, 1996)(Carnes, J.).[4] At least one district court in the Ninth Circuit agrees with this view. *Nordling v. Crabtree,* 958 F.Supp. 498 (D.Or.1997) (special parole statute is unclear with regard to the nature of a release from a special parole violator term and the Commission's interpretation of the statute was reasonable and consistent with the purpose of the statute and the intent of the sentencing court).

The second view is that once a special parolee has been returned to custody as a special parole violator, he will not receive any credit for the time on special parole and may be reparoled as a *regular* parolee. Neither the Respondents nor Petitioner argue for this position. Three circuits have adopted this view. *Evans v. United States Parole*

*Com'n,* 78 F.3d 262, 264 (7th Cir.1996) ("[T]he first revocation turns special parole into regular imprisonment, release from which is normal parole.")[hereinafter "Evans"]; *Fowler v. United States Parole Com'n,* 94 F.3d 835, 840 (3d Cir.1996) ("[T]he parole that is imposed after special parole is revoked can only be traditional parole.")[hereinafter *"Fowler"*]; *United States v. Robinson,* 106 F.3d 610 (4th Cir.1997) ("The Commission can instead require Robinson to serve the full original term of special parole in prison, or it can release him after some incarceration to a term of regular parole.")[hereinafter "Robinson"]. One published district court opinion in the Eleventh Circuit follows this view. *United States v. Clemmons,* 945 F.Supp. 1519 (M.D.Fla.1996); see also *Armstrong v. United States Parole Com'n,* 947 F.Supp. 1501 (W.D.Wash.1996); *Strong v. United States Parole Com'n,* 952 F.Supp. 172 (S.D.N.Y.1997).

Petitioner, however, rejects this second view arguing that the statute does not authorize release on any parole, including regular parole. Petitioner argues that "former Section 841(c) neither vested the district courts or the USPC with authority to impose additional special parole terms nor operated to impose such terms automatically it therefore follows that it does not authorize the imposition of regular parole following revocation of a special parole term and the imposition of imprisonment." (Petition at p. 11). He argues that had Congress intended any kind of supervision to follow a revocation of special parole, then it would have indicated that in the statute.

Petitioner, instead, argues for a third view. He argues that special parolees should be treated like supervised releasees were treated prior to the amendment of the supervised release statute. Petitioner perceives a "re-

---

na v. Thornburgh, 884 F.2d 861, 865 (5th Cir. 1989)("As indicated above, the Parole Commission's authority in special parole cases parallels its authority over regular parole terms").

**3.** While the Respondent's agree with the result in *Billis,* the Respondent does not argue that the result in this case should be dependent on how

the Eleventh Circuit interpreted the later-enacted supervised release statute. This Court agrees.

**4.** Magistrate Judge in the Southern District of Florida has recommended that this Court adopt the first view in *Felipe Amaiz v. Patrick,* slip op. no. 97–836–CIV–LENARD (S.D.Fla. May 27, 1997).

release"[5] to be the equivalent of the "imposition" of a sentence and the "imposition" of an additional special parole term. Petitioner cites *Artuso v. Hall,* 74 F.3d 68 (5th Cir. 1996) in support of this third view. Petitioner concludes that the Commission· is without authority to "impose" a "new term" of parole, just as district courts were (prior to the statutory amendment)[6] without authority to impose a new term of supervised release following the revocation of supervised release. Petitioner asserts that a reparole date (in Petitioner's case, a reparole date after the service of two months) becomes a determinate sentence with no supervision to follow.

Petitioner's offense took place prior to November 1, 1987, and the "old law" statutory scheme applies to Petitioner's sentence. When interpreting a portion of that statutory scheme such as the special parole statute, this Court must consider how that interpretation affects other related old law statutes such as regular parole and mandatory release. Regular parole is the discretionary release from a term of imprisonment, 18 U.S.C. § 4206 (1976), and mandatory release is a release "as if on parole" based on the accumulation of prison good conduct time. 18 U.S.C. § 4164 (1948).

■ The special parole statute predates the supervised release statute by 16 years and the interpretation of a later-enacted statute, while perhaps a useful tool, should not be dispositive of an interpretation of the earlier statute. The question is what Congress intended when it created a special parole term in 1970. The words "parole" and "re-

voke" as they are used in the special parole statute must be· interpreted within the context of the statutory scheme in which it was created in 1970 and not within the context of a new statutory scheme created 16 years later.

■ The Court finds that the Commission does not have the authority to "impose" either terms of imprisonment or terms of special parole. The Commission has the authority to determine if and when a prisoner may be released to community supervision from a term of imprisonment imposed by a sentencing court. 18 U.S.C. § 4203(b)(1); *Artez v. Mulcrone,* 673 F.2d 1169, 1170 (10th Cir.1982)("in granting or denying parole, the Parole Commission does not modify a trial court's sentence, but merely determines whether the individual will serve the sentence inside or outside the prison. walls."). The Commission. also has the authority to determine if a parolee should be returned to custody if he has violated the conditions of his release. 18 U.S.C. § 4214(d)(5). The Commission's authority, although similar in function to a court's sentencing authority, is not an usurpation of the sentencing authority that traditionally lies within the judicial branch. The parole decision does not mean that the. Commission has "imposed"[7] any kind of "sentence." The Fifth Circuit rejected a prisoner's challenge that the parole decision usurps the power of the sentencing judge by noting:

Clearly, the power to grant or deny parole has been vested by Congress in the Commission. This does not infringe upon the judiciary in any fashion. A denial of pa-

---

5. This is the term used by the *Artuso* court rather than the more accurate term "reparole."

6. Title 18 U.S.C. § 3583 was amended in 1986 to add the revocation provisions. See Public Law 99–570, Tile I, § 1006(a), Oct. 27, 1986, 100 Stat. 3207–6, 3207–7 (the Anti–Drug Abuse Act of 1986). It was this statute that was interpreted by the Fifth Circuit in United States v. Holmes, 954 F.2d 270 (5th Cir.1992)(Higginbotham, J.). Recognizing the split in the circuits, Congress amended the statute to make it clear that district courts have the authority to impose new terms of supervised release after revoking the original ones. Pub.L. 103–322, § 110505, 108 Stat.2017 (1994), codified at 18 U.S.C. § 3583(h). Although Congress could amend the supervised release statute to address the split in the circuits,

Congress can not amend § 841(c) as it applies only to "old law" offenders and would raise · troubling *ex post facto* issues.

7. The use of the word "impose" with respect to setting a presumptive· reparole date was introduced by the Fifth· Circuit in Artuso. Perhaps the Fifth Circuit introduced the term "impose" with respect to a presumptive parole date as it simplified the analogy between the special parole statute and the supervised release statute. However, a prisoner *applies* for parole, 18 U.S.C. § 4203(b)(1), (unlike a sentence) and ·a parole date is· flexible and may be advanced or retarded. Therefore, the compulsory and obtruding connotations of "impose" make it an inappropriate verb to describe the granting of a discretionary parole date. ·

role merely requires the prisoner to serve out the length of his sentence. The denial does not enhance the sentence imposed upon the prisoner by the court. Parole is only an expectation that may be granted by the Commission.

*Page v. United States Parole Comm'n,* 651 F.2d 1083, 1085 (5th Cir. Unit A 1981).

■ This Court rejects the third view as presented by Petitioner because it would make the old law sentencing structure incoherent. First, it turns the Commission into a sentencing authority and there is no support in the legislative history for such a radical change in the mission of an executive agency and it conflicts with how courts have traditionally viewed parole. *Morrissey v. Brewer,* 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972)("The essence of parole is release from prison, before the completion of sentence, on a condition that the prisoner abide by certain rules during the balance of the sentence.") Second, interpreting a presumptive parole date as a "sentence"[8] creates an issue of whether or not the prisoner would now be eligible for parole from that "sentence," an absurdity that Petitioner's view fails to address. Third, labeling a presumptive parole date a "sentence" creates an issue as to whether good time credits under 18 U.S.C. § 4161 would be applied to this "sentence." If so, then the release would not be unconditional but "as if on parole", again creating an absurd result that is contrary to Petitioner's claim that the release was unconditional. Finally, Petitioner's argument is contradictory. On the one hand he argues that the Commission has the authority to "impose a new term of imprisonment" that is in effect a "sentence" without any support in the statute or legislative history, and on the other hand he argues that the Commission has no authority to "impose" a new term of special parole because it was not specifically authorized by Congress.

Moreover, although Petitioner argues that *Artuso* reflects this third view, no district court in the Fifth Circuit has agreed with this argument. Several district courts in the Fifth Circuit have found, in unpublished opinions, that *Artuso* is in accord with the second view.

Petitioner relies on the meaning of the word "revoke" and concludes that since the meaning of the word "revoke" in the supervised release context means to "rescind or cancel" that the word must have the same meaning in the context of the sentencing structure that existed before supervised release was created. However, the word "revoke" in the special parole statute must be interpreted within the context of the statutory landscape that existed in 1970 when the special parole statute was created and the purpose behind it. It is more logical to find that the word "revoke" in the special parole context has the same meaning as the word "revoke" in the regular parole context than it is to find that it has the same meaning as the word "revoke" is used in the supervised release statute.

8. It is interesting to note that presumptive parole dates were not used in 1970 when the special parole term statute was created. In 1970, the Board of Parole did not set "presumptive" parole dates. Rather, a decision would be made either to grant or deny parole at each parole hearing. If parole was denied, the inmate would be "set off" for another hearing in the future. In 1973 the Parole Board began using guidelines to determine when to grant parole. These guidelines were published in the Code of Federal Regulations. 28 C.F.R. § 2.20 (1974); 38 Fed.Reg. 3194245 (Nov. 19, 1973). If parole were "granted" it was called an "effective" parole date and was ordinarily a date within 6 months of the parole hearing. A parole date was subject to being reconsidered if new adverse information (e.g., misconduct by the prisoner) was reported to the Board before the prisoner was released. 28 C.F.R. § 2.20 (1970).

It was not until 1977, one year after the Parole Commission and Reorganization Act of 1976, that the Commission introduced the concept of a "presumptive" parole date. 42 Fed.Reg. 39808–21 (Aug. 5, 1977); 28 C.F.R. § 2.12 (1978). After 1977, the Commission stopped the practice of "setting off" a next hearing date to a time when parole would be likely, and started setting a "presumptive parole date" that was subject to periodic review and change based on institutional conduct and other factors. 28 C.F.R. §§ 2.28, 2.29(c), 2.34. The Commission could change a presumptive parole date if it received any new adverse or positive information about the prisoner. Neither the set off date for another hearing under the pre–1977 system, nor the presumptive parole date set by the Commission since then, has been interpreted to be the imposition of a "sentence" prior to the decision in *Artuso*.

In 1970, only sentencing courts had the authority to impose terms of imprisonment. Although an administrative agency, then the United States Board of Parole, had the authority to parole a prisoner serving a term of imprisonment and to revoke that parole if the conditions of release were violated, the revocation of parole did not mean that the sentence of imprisonment was "rescinded or canceled." 18 U.S.C. § 4204 (1948), *revised and recodified* at 18 U.S.C. § 4205 (1976). The term of imprisonment imposed by the sentencing court remained intact. The Board of Parole had no authority to change the nature or duration of the sentence. What was revoked was the grant of parole and the prisoner was "recalled" to prison with no credit for the time spent on parole. Thus, when Congress created the special parole term in 1970, it must have intended the revocation of that special parole to operate in the same manner as the revocation of regular parole or else it would not have called it a special *parole* term. The Supreme Court views the revocation of parole as a "return" to prison, not the "canceling" or "rescinding" of the underlying sentence. *Morrissey*, 408 U.S. at 479–80, 92 S.Ct. at 2599–2600 ("The enforcement leverage that supports the parole conditions derives from the authority to *return* the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules.")(emphasis added).

Supervised release is more akin to probation than parole, in that the released offender is under the supervision of the district court which has the authority to impose a sentence if the conditions of release are violated. Like supervised release, when probation is revoked, the term of probation is canceled or rescinded, and the court may then impose a term of imprisonment. Parole, on the other hand, is an administrative determination that the term of imprisonment already imposed by a court, may be served in the community. The revocation of parole, as noted above, did not result in the cancellation or rescission of the sentence. Since Congress did not call the special parole term it created in 1970 a special *probation* term (as it could have since probation existed in 1970), it is reasonable for the Bureau of Prisons and the Parole Commission to interpret 21 U.S.C. § 841(c)

to mean that when a special parole is revoked the special parole term imposed by the sentencing court is not canceled or rescinded. Rather, the special parole violator can be reparoled (just like a regular parole violator) to the remainder of the special parole term imposed by the sentencing court.

"In determining the meaning of [a] statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990). To interpret the special parole statute as Petitioner suggests would clearly frustrate the object and policy of Congress in creating special parole in 1970. Congress created special parole terms because of its concern that serious drug offenders were in need of some guaranteed term of post-imprisonment supervision. *See Bifulco v. United States*, 447 U.S. 381, 392, 100 S.Ct. 2247, 2254–55, 65 L.Ed.2d 205 (1980) (examining the legislative history of the special parole term in the context of whether or not the special parole term should apply to conspiracy offenses); *Bunker v. Wise*, 550 F.2d 1155, 1158 (9th Cir.1977). Petitioner is arguing that Congress intended that a special parole term could be terminated early if the special parolee violated the conditions of parole. This anomalous result is dramatically illustrated by the facts of this case where a 5–year term would be reduced to two months. An interpretation of a statute that creates a result patently contrary to the expressed intent of Congress should be approached with caution. *Cf. Russie v. United States Dep't of Justice*, 708 F.2d 1445, 1448 (9th Cir.1983) ("To apply the 180–day limitation of 18 U.S.C. § 4164 [to a special parole case] would ignore the penalty structure created by Congress in the Comprehensive Drug Abuse Prevention and Control Act of 1970 and would frustrate the intent and purpose of this additional period of supervision Congress considered important enough to require by statute.").

The cases relying on the interpretation of the word "revoke" within the meaning of the supervised release context should be rejected, as those opinions did not address the statutory landscape with regard to "regular"

parole that existed when the special parole term was created. At that time, the statute governing forfeiture of street time on "regular" parole was found at 18 U.S.C. § 4205 (1948), which provided:

A warrant for the retaking of any United States prisoner who has violated his parole, may be issued only by the Board of Parole or a member thereof and within the maximum term or terms for which he was sentenced. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, *and the time the prisoner was on parole shall not diminish the time he was sentenced to serve.*

18 U.S.C. § 4205 (1948), 62 Stat. 854. Therefore, it was clearly the law at the time the special parole statute was created that regular parolees received no credit for the time spent on parole if their parole was revoked. It was not until 1976 that Congress reorganized the regular parole statutes (and *not* the special parole provisions of 21 U.S.C. § 841(c)) that regular parolees would, ordinarily, receive sentence credit for the time spent on parole unless they were convicted of a crime, while on parole, punishable by a term of imprisonment. 18 U.S.C. § 4210(b)(2) (1976). The *Evans* and *Fowler* courts assume that the 1976 amendments to the regular parole statutes (specifically, 18 U.S.C. § 4210) implicitly repealed the automatic street time forfeiture provisions in the special parole statute. Prior to *Artuso,* the Fifth Circuit had unambiguously concluded that a three-time special parole violator did not become a regular parolee following the revocation of special parole. *Munguia.* There the Fifth Circuit considered the language of § 841(c) and concluded that the mandatory forfeiture of street time for time spent on special parole was not "superseded by 18 U.S.C. § 4210(b)(2) when the latter was enacted as part of the Parole Commission and Reorganization Act of 1976." *Munguia,* at 520. The Fifth Circuit found that:

[T]here is no express evidence that Congress intended to overrule all or part of section 841(c) when it enacted section 4210. As is well established, repeals by implica-

tion are not favored, and courts presume that two statutes can be construed consistently whenever possible. See N. Singer, *Sutherland Statutory Construction,* § 23.10 at 346 (Sands 4th ed.). We therefore conclude that the enactment of section 4210 does not affect the substantive terms of section 841(c) that control the loss of street time with respect to drug offenders.

*Munguia,* at 520. The Eleventh Circuit has consistently held that repeals by implication are strongly disfavored. *United States v. Jordan,* 915 F.2d 622, 627 (11th Cir.1990)(collecting and summarizing Supreme Court cases); *Knight v. State of Georgia,* 992 F.2d 1541 (11th Cir.1993); *Patel v. Quality Inn South,* 846 F.2d 700 (11th Cir.1988). *See also Tyler v. United States,* 929 F.2d 451 (9th Cir.1991) (no implied repeal of automatic forfeiture of street time provision found in D.C.Code). The Ninth Circuit has recognized the intent and purpose behind the special parole statute is to ensure a guaranteed period of post-incarceration supervision, *See Russie.* 708 F.2d at 1447; *McQuerry,* 961 F.2d at 845 n. 5, and the Commission's interpretation of the statute is consistent with that intent.

The introduction of cases interpreting the supervised release statute in the interpretation of the special parole statute was a wrong turn. Words may have different meanings when they are used in different statutes, For example, "in custody" for the purposes of jurisdiction to consider a habeas corpus application such as this one is not synonymous with "in custody" for the purposes of sentence credit. The Commission argues that it has never maintained the position that it ever "imposed" a new term of special parole. Rather, the Commission has interpreted the special parole statute to mean that once special parole is revoked, the special parole violator may be rereleased to the community to continue serving the remainder of the term imposed by the sentencing court. Since the sentencing court imposed a special parole term, then the rerelease was necessary to the remainder of a special parole term.

The Parole Commission's regulation interpreting the special parole statute to mean

that a reparole is to the remainder of the special parole term is reasonable. Although *Artuso,* 74 F.3d at 71 and *Fowler,* 94 F.3d at 840, find that the Commission's interpretation of § 841(c) contradicts the "plain language" of § 841(c), those courts can only make this finding by arguing by analogy to the later-enacted supervised release statute. The fact that the *Artuso* and *Fowler* courts could only interpret § 841 by making reference to another statute underscores that § 841 is unclear and is not so plain as to be unambiguous to which no deference is due. *Nordling v. Crabtree,* 958 F.Supp. 498 (D.Or. 1997).

Since this interpretation of the special parole statute is reasonable in view of the statutory landscape that existed in 1970 and as well as the expressed intent of Congress of the purpose behind the special parole statute, this Court is obliged to defer to the Commission's interpretation of a statute it administers and deny the application for habeas corpus relief. *Chevron v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)(requiring courts to defer to an administering agency's reasonable construction of an unclear statute); *Reno v. Koray,* 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995)(Bureau of Prisons entitled to deference in interpreting statutes to compute sentences); *Howe v. Smith,* 452 U.S. 473, 485, 101 S.Ct. 2468, 2476, 69 L.Ed.2d 171 (1981) ("Because the Attorney General, and through him the Bureau of Prisons, are charged with the administration of § 5003, their view of the meaning of the statute is entitled to considerable deference."); *E.E.O.C.v. Commercial Office Products Company,* 486 U.S. 107, 115–16, 108 S.Ct. 1666, 1671, 100 L.Ed.2d 96 (1988)("[T]he EEOC's interpretation of ambiguous language need only be reasonable to be entitled to deference."); *F.E.C.v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 30, 102 S.Ct. 38, 41, 70 L.Ed.2d 23 (1981) ("[I]n determining whether the Commission's action was 'contrary to law,' the task for the Court of Appeals was not to interpret the statute as it thought best but rather the narrower inquiry into whether the Commission's construction was 'sufficiently reasonable' to be accepted by a reviewing court.") (citations omitted).

## *CONCLUSION*

In accordance with the above and foregoing, it is hereby

**RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus Pursuant to Title 28 U.S.C. § 2255 be **DENIED.**

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Court Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger,* 847 F.2d 745 (11th Cir.1988), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988); *RTC v..Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993).

**RESPECTFULLY SUBMITTED** this 21th day of July, 1997 at Miami, Florida.