**UNITED STATES PAROLE COMMISSION,**
**Appellant,**

v.

**Christopher Rufus WILLIAMS, Appellee.**

**No. 94–5284.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 19, 1995.

Decided May 16, 1995.

Rehearing and Suggestion for Rehearing In Banc Denied July 20, 1995.

Margaret M. Lawton, Asst. U.S. Atty., argued the cause, for appellant. With her on the briefs were Eric H. Holder, Jr., U.S. Atty., John R. Fisher, Thomas J. Tourish, Jr., and John M. Facciola, Asst. U.S. Attys.

Ronald Gilchrist, appointed by the court, argued the cause and filed the brief, for appellee.

Before: BUCKLEY, WILLIAMS, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Before 1987, drug offenders released from prison were required to serve terms of "special parole" administered by the United States Parole Commission. When Christopher R. Williams was convicted in 1976 for federal narcotics offenses, the court therefore sentenced him not only to three concurrent terms of five years' imprisonment, but also to three concurrent five-year special parole terms pursuant to 21 U.S.C. § 841(b). Eighteen years later, while he was serving time in prison for parole violations, Williams brought this petition for a writ of habeas corpus against the Parole Commission, which had

ordered him imprisoned on the authority of 21 U.S.C. § 841(c).[1] The district court held that the Commission had no jurisdiction over Williams and issued an order granting the writ, from which the Parole Commission now appeals. *Williams v. United States*, 860 F.Supp. 1 (D.D.C.1994).

One might reasonably wonder how Williams, whose five-year special parole term started running on April 7, 1984,[2] managed to wind up in prison in 1994 for parole violations. The explanation is a bit complicated. In 1986 the Parole Commission issued a warrant charging Williams with violating the conditions of special parole, including his duty to report a change in his residence. On December 21, 1988, Williams was arrested and detained on the Commission's warrant, and on June 7, 1989, the Commission revoked his special parole. Under 21 U.S.C. § 841(c), which is set forth in the margin,[3] Williams received no credit for "street time," that is, for the period he had already spent on special parole (April 1984 to December 21, 1988). Instead, he faced a "new term of imprisonment" equal to "the period of the special parole term"—five years, from the date of his arrest. *Id.*

After serving fifteen months of his new five-year sentence in prison, Williams was released on March 21, 1990. The Commission "reparoled" him for the remaining forty-five months—March 21, 1990, to December 20, 1993.

In May 1993 Williams was once again arrested for parole violations, including using illegal drugs. The Commission revoked his parole on October 19, 1993; denied him cred-

it for street time from March 1990 to May 1993; and imposed a sixteen-month prison term, leaving him with twenty-nine months of special parole (to February 17, 1997) remaining on his five-year sentence. It was while Williams was serving this sixteen-month term of imprisonment that he brought his petition for a writ of habeas corpus.

The district court granted the writ on two grounds. The court construed § 841(c) to mean that after revoking special parole, the Commission could order the parolee imprisoned for less than the full special parole term, but if it did so it could not reparole him for the remainder of the term. 860 F.Supp. at 4. On this reasoning, the Commission's jurisdiction over Williams expired on March 21, 1990, when Williams completed his first prison sentence for parole violations. The district court's other ground was that the Commission abused its discretion in 1993 by "yo-yo sentencing" "that may well parlay a five year sentence into a life sentence." 860 F.Supp. at 4–5.

■ We will take up the district court's last point first. The Commission would not have acted arbitrarily, the court thought, if it had simply ordered Williams to serve five years in prison. Placing him on parole is what made no sense to the district court because Williams is either "unable or unwilling to comply with the terms of his parole," and so may wind up with a "life sentence." 860 F.Supp. at 4. This is somewhat of an exaggeration. If Williams keeps violating the parole conditions, he doubtless will wind up serving more time in prison. But the

---

**1.** 21 U.S.C. § 841(c) was repealed by Pub.L. No. 98–473, tit. II, § 224(a)(2), formerly § 224(a)(6), 98 Stat. 1987, 2030 (1984), as renumbered by Pub.L. No. 99–570, tit. I, § 1005(a)(2), 100 Stat. 3207, 3207–6 (1986), but remains applicable to offenses committed prior to November 1, 1987.

**2.** After an unsuccessful appeal of his 1976 conviction, Williams started serving his sentence in April 1979. He was released from prison on April 7, 1982, and served the remainder of his prison term (until April 7, 1984) on ordinary parole.

**3.** A special parole term imposed under this section or section [859, 860 or 861] of this title may be revoked if its terms and conditions are

violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section or section [859, 860, or 861] of this title shall be in addition to, and not in lieu of, any other parole provided for by law.

21 U.S.C. § 841(c) in effect prior to amendment by Pub.L. No. 98–473, § 224(a). *See supra* note 1.

maximum amount of time he possibly could spend behind bars for parole violations is five years, not life. So far he has done close to 31 months. Theoretically, Williams could be on special parole for most of the balance of his life—if, for instance, each time he was caught using illegal drugs the Commission ordered him to serve a few days in prison and the remaining portion of the five-year term (less time in prison) on special parole. But the district court's problem is not, as we see it, with the Commission. It is with Williams' recidivism and with § 841(c)'s provision that when a parolee violates the conditions on his parole, whatever street time he had accumulated counts for naught. In this light, we see nothing wrong whatsoever with the Commission's giving Williams several chances to straighten out. The district court's alternative—that a parole violator is excused from serving a term equal to the special parole term imposed by the sentencing court unless the Commission orders him to prison for the entire period—is, at the least, no more rational. What should the Commission do when the special parole term, rather than five years, is life[4] and the parole violation consists of failing to report one time?

■ The district court's other reason for issuing the writ—that the Commission may not reparole a defendant after revoking special parole and ordering imprisonment for part of the remaining term—misconstrues § 841(c). The Commission's authority to revoke a special parole term is unquestioned. *See Escamilla v. Warden, FCI El Reno*, 2 F.3d 344, 347 (10th Cir.1993); *Battle v. United States Parole Comm'n*, 834 F.2d 419, 420 (5th Cir.1987) (per curiam). When it does so, the Commission *must* impose a new term of imprisonment—in the words of § 841(c), "the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprison-

ment shall not be diminished by the time which was spent on special parole." But § 841(c) also permits the Commission to require the revoked parolee to serve only "part of the remainder of the new term of imprisonment." When the Commission so orders, that is, when the parolee is imprisoned for less than the full term of imprisonment (here five years), what happens to the balance of the mandatory "new term of imprisonment"?

■ The Commission's answer, contained in its regulations issued pursuant to 18 U.S.C. § 4203(a)(1), is that the parolee may be placed back on special parole—reparoled—for the balance. Hence, 28 C.F.R. § 2.57(c) provides, in part:

> Should a parolee violate conditions of release during the Special Parole Term he will be subject to revocation on the Special Parole Term as provided in § 2.52, and subject to reparole or mandatory release under the Special Parole Term. Notwithstanding the provisions of § 2.52(c), a special parole term violator whose parole is revoked shall receive no credit for time spent on parole pursuant to 21 U.S.C. § 841(c).

And 28 C.F.R. § 2.52(b) states:

> If parole is revoked pursuant to this section, the Commission shall also determine, on the basis of the revocation hearing, whether reparole is warranted or whether the prisoner should be continued for further review.

These regulations, and the interpretation of § 841(c) they contain, are consistent with the fact that "prior to the sea change instituted by the Sentencing Reform Act, it was widely understood that any of the existing forms of non-detentive monitoring [including parole] could follow a post-revocation sentence of imprisonment." *United States v. O'Neil*, 11 F.3d 292, 298 (1st Cir.1993).

---

4. Courts have sustained lifetime special parole terms. *See e.g., Walberg v. United States*, 763 F.2d 143, 148–49 (2d Cir.1985); *United States v. Bridges*, 760 F.2d 151, 153 (7th Cir.1985); *United States v. Dayton*, 592 F.2d 253, 254 (5th Cir. 1979) (per curiam), *cert. denied*, 445 U.S. 971, 100 S.Ct. 1665, 64 L.Ed.2d 249 (1980); *United States v. Walden*, 578 F.2d 966, 972 (3d Cir. 1978), *cert. denied*, 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979); *United States v. Jones*, 540 F.2d 465, 468–69 (10th Cir.1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977); *United States v. Rivera–Marquez*, 519 F.2d 1227, 1228–29 (9th Cir.), *cert. denied*, 423 U.S. 949, 96 S.Ct. 369, 46 L.Ed.2d 285 (1975); *United States v. Rich*, 518 F.2d 980, 986–87 (8th Cir.1975), *cert. denied*, 427 U.S. 907, 96 S.Ct. 3193, 49 L.Ed.2d 1200 (1976).

"There was never any question that non-detentive monitoring could follow a prison sentence imposed in consequence of the revocation of a term of parole or special parole." *Id.* at 299 (citing 28 C.F.R. §§ 2.57, 2.52). And so "upon revocation of a special parole, an individual may be re-paroled." *United States v. Gozlon–Peretz*, 894 F.2d 1402, 1405 n. 5 (3d Cir.1990), *aff'd,* 498 U.S. 395, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991). *See also McQuerry v. United States Parole Comm'n,* 961 F.2d 842, 844 (9th Cir.1992).

The district court drew an analogy to some of the cases interpreting 18 U.S.C. § 3583(e)(3), which at the time of the court's decision provided:

> The court may ... revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release ... without credit for time previously served on postrelease supervision....

18 U.S.C. § 3583(e)(3). The Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits hold that when a court revokes a parolee's term of supervised release, the court may impose a term of imprisonment on him equal to or less than the supervised release term, but it may not combine imprisonment with another term of supervised release. *See, e.g., United States v. Koehler,* 973 F.2d 132, 134–36 (2d Cir.1992); *United States v. Malesic,* 18 F.3d 205, 206 (3d Cir.1994); *United States v. Cooper,* 962 F.2d 339, 341–42 (4th Cir.1992); *United States v. Holmes,* 954 F.2d 270, 272–73 (5th Cir.1992); *United States v. Truss,* 4 F.3d 437, 441 (6th Cir.1993); *United States v. McGee,* 981 F.2d 271, 274–76 (7th Cir.1992); *United States v. Behnezhad,* 907 F.2d 896, 898–99 (9th Cir.1990); *United States v. Rockwell,* 984 F.2d 1112, 1116–17 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2945, 124 L.Ed.2d 693 (1993); *United States v. Tatum,* 998 F.2d 893, 895–96 (11th Cir.1993) (per curiam). The First and Eighth Circuits hold that courts may order another period of supervised release to follow upon the parole violator's completion of his term of incarceration. *See, e.g., United States v. O'Neil,* 11 F.3d 292, 293 (1st Cir.1993); *United States v. Schrader,* 973 F.2d 623, 625 (8th Cir.1992).

This court has not yet addressed the issue, and we see no need to do so in this case. (Pub.L. No. 103–322, tit. XI, § 110505, 108 Stat. 1796, 2017 (1994) (codified at 18 U.S.C. § 3583(h)) amended the statute to provide that courts have the option of imposing imprisonment plus a new term of supervision.)

Unlike § 3583, which gives courts the option of imposing a new term of imprisonment equal to or less than the supervised release term, § 841(c) mandates a new prison term equal to the term of special parole. The term of imprisonment under § 841(c) for special parole violations is thus set by statute; the only open issue is whether the parolee must serve all of that term behind bars, or may serve the term through a combination of incarceration and special parole. We therefore believe that it is rather beside the point to suppose, as did the district court, that "to revoke a special parole is to annul it, thereby extinguishing it." 860 F.Supp. at 4. The important consequence of revocation is that § 841(c) requires the Commission to convert the special parole term into a term of imprisonment. This does not mean that the "new term of imprisonment" cannot consist of a period of confinement followed by special parole, equal to the original special parole term less the time served in prison. As indicated, the common pre-Sentencing Guidelines understanding was that parole violators could be reparoled pursuant to § 841(c). This much followed from the established pre-Guidelines sentencing principle that "parole is available unless expressly precluded," *United States v. Mudd,* 817 F.2d 840, 843 (D.C.Cir.1987) (per curiam), a principle applicable as much to a "new term of imprisonment" imposed under § 841(c) as to sentences of imprisonment imposed under other statutes before the Guidelines took effect, and a principle at odds with the district court's view that under § 841(c), new terms of imprisonment were meant to be nonparolable. If there is any remaining doubt, it is put to rest by the Parole Commission's regulations embodying that principle, and the respect to which those regulations are entitled. *Battle,* 834 F.2d at 420 (citing *Walker v. United States Parole Comm'n,* 592 F.2d 905, 906 (5th Cir.1979); *United States v. Bridges,* 760 F.2d 151, 154 (7th Cir.1985)).

The district court erred in granting Williams' petition for a writ of habeas corpus. He has not served the full term imposed for his parole violations. Williams raised other issues the district court did not pass upon, including issues relating to good-time credits. These may be considered on remand.

*Reversed and remanded.*