Kent EVANS, Petitioner–Appellant,

v.

UNITED STATES PAROLE COMMIS-
SION, Respondent–Appellee.

Jay VAN RUSSELL, Petitioner–
Appellant,

v.

UNITED STATES PAROLE COMMIS-
SION, Respondent–Appellee.

Nos. 95–2489, 95–2490.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 17, 1996.

Decided Feb. 13, 1996.

Daniel J. Hesler (argued), Office of the Federal Defender Program, Chicago, IL, for Kent Evans.

Luis M. Galvan, Daniel J. Hesler (argued), Office of the Federal Defender Program, Chicago, IL, for Jay Van Russell.

Thomas P. Walsh, Ramune R. Kelecius (argued), Office of the United States Attorney, Civil Division, Chicago, IL, for U.S. Parole Commission.

Before BAUER, EASTERBROOK, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

More than eight years ago, Kent Evans was sentenced to two years in prison. He is still confined, and other convictions do not account for the extension; his conviction in 1987 for distributing 1.5 grams of marijuana is the only one on Evans' record. Jay Van Russell received a three-year sentence in 1982; like Evans, he is still in prison despite the lack of additional convictions.

What keeps these men behind bars is the term of special parole that followed their sentences, coupled with the Parole Commission's belief that any release following revocation creates a new term of special parole. Until the Sentencing Reform Act of 1984, which in this respect applies to crimes committed after October 27, 1986, drug offenders received terms of special parole. Three things are "special" about special parole: first, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed, and its length selected, by the district judge rather than by the Parole Commission; third, when special parole is revoked, its full length becomes a term of imprisonment. In other words, "street time" does not count toward completion of special parole; as a rule, however, persons serving parole are returned to prison only for the remainder of their term, for the clock runs continuously. This third difference is a consequence of 21 U.S.C. (1982 ed.) § 841(c), which remains applicable to persons whose crimes predated its repeal:

A special parole term imposed under this section or [three other sections] may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section or [three other sections] shall be in addition to, and not in lieu of, any other parole provided for by law.

Evans was sentenced in 1987 to two years' imprisonment, to be followed by four years' special parole. On May 2, 1988, Evans was paroled from his principal sentence. On September 3, 1989, that sentence expired and the term of special parole began, only to be revoked on June 11, 1991. (Evans does not deny that he violated the terms of his release.) Under former § 841(c) the original term of imprisonment was increased by four years—until June 11, 1995. The Parole Commission was entitled to order Evans to "serve all or part of the remainder of the new term of imprisonment." It ordered him to serve 14 months and released him on June 16, 1992 (with credit for two months' good time). What were the terms of this release? Evans believes that he was on regular parole, as if from a single six-year term of imprisonment scheduled to end in June 1995; the Commission, though, treated him as serving a renewed, 34-month term of special parole (the original 48 months, less the 14 months already served or reduced by good time). See 28 C.F.R. § 2.57(c). The difference became important when, at the end of October 1992, the Parole Commission found Evans in violation a second time. Did he receive credit for the 4½ months between his release and the second revocation? If Evans was on regular parole, the answer is yes—for parolees get credit for "street time" unless they are convicted of new offenses or fail to respond to a summons or warrant, see 28 C.F.R. § 2.52(c), none of which occurred. See also 18 U.S.C. § 4210(b) (1982 ed.) (repealed): "Except as otherwise provided ..., the jurisdiction of the Commission over the parolee shall terminate no later than the date of the expiration of the maximum term or terms for which he was sentenced". But if Evans was on special parole, then October 1992 marked the beginning of a new 34-month term. This cycle of release and revocation has been repeated twice more. Evans has spent approximately 38 months in custody since June 1991. By the Commission's reckoning, he has 10 months to go; by his own, all detention after June 11, 1995, is

unlawful. Van Russell, who received a 15–year term of special parole, has experienced a similar series of releases and revocations.

■ Both petitioners satisfy the "custody" requirement of 28 U.S.C. § 2241. Van Russell will remain in custody even if he prevails, but he seeks to reduce its term, which is an appropriate use of § 2241. See *Garlotte v. Fordice*, —— U.S. ——, 115 S.Ct. 1948, 132 L.Ed.2d 36 (1995). Although the arguments on which petitioners seek relief are statutory rather than constitutional, § 2241(c)(3) authorizes relief for any person "in custody in violation of the Constitution or laws or treaties of the United States". Compare *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), with *White v. Henman*, 977 F.2d 292 (7th Cir.1992), and *Kramer v. Jenkins*, 803 F.2d 896 (7th Cir.), on rehearing, 806 F.2d 140 (1986). And although it is unclear whether Evans and Van Russell have presented their claims to the Parole Commission in administrative proceedings, the Commission does not invoke the exhaustion rule, and we are not disposed to do so unbidden, see *Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), given that petitioners' argument does not depend on factual nuances. Nothing the Commission could do, short of repealing 28 C.F.R. § 2.57(c), would aid the petitioners, but the process would require them to spend additional time in prison.

■ The district court ruled against both petitioners on the merits. 889 F.Supp. 327 (N.D.Ill.1995). Following *Parole Commission v. Williams*, 54 F.3d 820 (D.C.Cir.1995), the district court held that release from imprisonment that follows the revocation of special parole is a new term of special parole. Impelled in part by *United States v. McGee*, 981 F.2d 271 (7th Cir.1992), and in part by the language of former § 841(c), we reach a different conclusion: the first revocation turns special parole into regular imprisonment, release from which is normal parole. Accord, *Artuso v. Hall*, 74 F.3d 68 (5th Cir. 1996).

Special parole was a short-lived instrument of federal criminal justice. The Sentencing Reform Act replaced special parole (first introduced in 1970, see 84 Stat. 1260) with "supervised release," a similar institution but administered by the judicial branch. See generally *Gozlon–Peretz v. United States*, 498 U.S. 395, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991). Congress made the change by substituting the words "supervised release" for "special parole" throughout the United States Code and adding new provisions governing the termination of supervised release by district courts. The revocation rule, in 18 U.S.C. § 3583(e), says that a judge may:

(1) terminate a term of supervised release . . .

(2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and . . . modify, reduce, or enlarge the conditions of supervised release . . .

(3) revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision . . . or

(4) order the person to remain at his place of residence . . . .

Subsection 3583(e)(3) is quite similar to § 841(c). The question in *McGee* was whether a judge could revoke a term of supervised release and require the person to serve part of that term in prison, to be followed by supervised release for the remainder. We held not, concluding that a term once "revoked" is extinguished and converted to regular imprisonment. See also *United States v. Eicke*, 52 F.3d 165 (7th Cir.1995). The same understanding, applied to § 841(c), means that the term of special parole is replaced by a normal term of imprisonment. The Parole Commission cannot impose a new term of special parole, any more than the district judge could fashion a new term of supervised release. There is only a term of imprisonment, and release before its end is therefore normal parole.

The D.C. Circuit concluded that former § 841(c) differs from § 3583(e)(3) because, although § 3583(e)(3) allows the district court to require the defendant to serve "all or part" of the term, § 841(c) "mandates a new prison term equal to the term of special parole. The term of imprisonment under

§ 841(c) for special parole violations is thus set by statute; the only open issue is whether the parolee must serve all of that term behind bars, or may serve the term through a combination of incarceration and special parole." 54 F.3d at 824. This way of putting things builds the answer into the question: the only options the D.C. Circuit considered are (a) no re-release, and (b) re-release on special parole. Having excluded option (a), *Williams* thought that it was driven to (b). This is a false dichotomy. Option (a) is inconsistent with § 841(c); the Parole Commission has express authority to release the person again. The genuine options therefore are (b) re-release on special parole, and (c) re-release on regular parole. The D.C. Circuit did not explain why (b) is superior to (c) as an understanding of the statute. Like the fifth circuit in *Artuso*, we think that § 841(c) itself chooses between these options. When a term of special parole is revoked, "the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole." After the revocation, the defendant has a single, longer, but ordinary, term of imprisonment. Evans started with a two-year term; after revocation, he had a six-year term, only two years of which had been satisfied. The Parole Commission was free to award parole from that six-year sentence, but there is no statutory basis for calling the parole "special" or applying the forfeiture rule of § 841(c) on a successive return to prison.

Section § 841(c) said that "the *original* term of imprisonment shall be increased by the period of the special parole term" (emphasis added). An "original" term can be augmented only once; after that, it is not original. What is more, § 841(c) spoke of revoking a "special parole term imposed under this section"—that is, by a judge as part of the sentence—rather than revoking a special parole term created by operation of regulation after release from a prior revocation. The Parole Commission cannot "impose" a term of special parole any more than it can "sentence" a defendant to prison.

Against this the Commission musters three arguments. First, it submits, we should defer to its regulation providing that re-release reinstated special rather than ordinary parole. Now we have substantial doubt that the Judicial Branch owes any deference to the Executive Branch when the question concerns the maximum term of imprisonment; certainly judges do not defer to the Attorney General's interpretation of Title 18. No matter; under *Chevron* a court accepts the agency's views only when there is a statutory gap or ambiguity; we perceive none in former § 841(c), just as *McGee* saw no ambiguity in § 3853(e)(3). Second, the Commission argues, its interpretation is superior because a longer period of supervision will help it to penalize and rehabilitate persons who cannot follow the terms of their release. This is a doubtful proposition—for judges rather than the Commission set the length of special parole—but is at all events irrelevant. Whether terms of supervision (and the maximum time in prison) should be long or short does not alter the meaning of the statute. Our job is to determine the extent of the Commission's *power*. When parole supervision ends, incorrigible offenders may be prosecuted and convicted for their new crimes.

Finally, the Commission observes that *McGee* is not the last word on the supervised release question. After this court (and eight other circuits) held that district judges may not prescribe new terms of supervised release after revoking the original ones, Congress amended the statute to give judges that power. Pub.L. 103–322, § 110505, 108 Stat. 2017 (1994), codified at 18 U.S.C. § 3583(h). This new subsection reads:

> When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of im-

prisonment that was imposed upon revocation of the supervised release.

District judges thus have been authorized to reinstate supervised release in the same way the Parole Commission reinstated special parole for Evans and Van Russell. This shows, the Commission insists, that our interpretation of § 3583(e)(3) in *McGee* was mistaken and should not be applied to § 841(c).

 What a surprising argument for the Executive Branch to advance so soon after *Rivers v. Roadway Express, Inc.,* — U.S. —, — — —, 114 S.Ct. 1510, 1515–16, 128 L.Ed.2d 274 (1994), rejected the contention that amendment of a statute "corrects" the judicial construction of the law. The legislative and judicial branches play different roles. A change in statutory language— or, in this case, a new statutory section— does not imply that the exegesis of the prior law was mistaken. *Mojica v. Gannett Co.,* 7 F.3d 552, 562–64 (7th Cir.1993) (en banc) (concurring opinion). The members of Congress legislating in 1994 lacked special insight into the meaning of § 3583, which was enacted in 1984, let alone of § 841(c), enacted in 1970. Congress acts by legislating rather than by reinterpreting laws already on the books. That is why *Rivers* held that the Civil Rights Act of 1991 applies prospectively. Changes in the law are retroactive only if Congress makes them so expressly—a principle with special force in criminal cases, given the Ex Post Facto Clause of the Constitution. We need not decide whether Congress could apply new rules to violations of the terms of release that occur after the change in the law. See *United States v. Reese,* 71 F.3d 582 (6th Cir.1995). Congress did not change former § 841(c), and it did not make the new § 3583(h) retroactive. The 1994 amendment is irrelevant to our task, and we hold that once special parole has been revoked, any further release-and-revocation cycle uses the rules for ordinary parole.

Petitioners are entitled to the relief they seek. The judgments are reversed, and the cases are remanded for the issuance of appropriate writs. Although we will issue our mandate on the regular schedule to give the Commission time to seek rehearing or to petition for certiorari, Evans must be released on bail immediately, on his own recognizance.