**Robert L. FULTZ, Petitioner,**

v.

**Donna STRATMAN, Warden, Metropolitan Correctional Center, San Diego, California, Respondent.**

**No. 96–1889–IEG (RBB).**

United States District Court,
S.D. California.

April 24, 1997.

Linda Frakes, Asst. U.S. Atty., San Diego, CA, for respondent.

Jeremy D. Warren, San Diego, CA, for petitioner.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

GONZALEZ, District Judge.

Robert L. Fultz, a person in federal custody, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] His petition raises the question whether the former "special parole" statute, 21 U.S.C. § 841(c), permitted the United States Parole Commission to impose a new term of special parole following revocation of a previous term. To date, the Ninth Circuit has not addressed this question, four other circuits have answered it in the negative, and two

---

1. Fultz denominates his pleading a "Petition for Writ of Habeas Corpus," without citation to any statute. However, the government, in its opposition, characterizes it as a "Motion Pursuant to 28 U.S.C. § 2255." In his traverse, Fultz refers to his pleading as a "habeas corpus motion pursuant to 28 U.S.C. § 2241."

The distinction is significant because a court cannot entertain a petition for habeas corpus relief under § 2241 if the petitioner is authorized to bring a motion pursuant to § 2255 and has failed to do so, unless "the remedy by motion is inadequate or ineffective to test the legality of [the] detention." 28 U.S.C. § 2255; *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir.1997). Here, the government has not argued that a § 2241 petition is inappropriate, nor has Fultz indicated why a § 2255 motion would be inadequate. However, Fultz has explained in his petition that the detention he challenges results from the execution of an arrest warrant by the Parole Commission, which in turn results from the Parole Commission's allegedly unlawful regulations allowing the reimposition of special parole following revocation. The special parole itself, as appears below, was initially imposed in 1978 by Judge Turrentine.

Of the other courts that have considered arguments similar to those raised by Fultz, some have considered them in the context of § 2241 petitions, without discussing whether a § 2255 motion was authorized or adequate. *See United States v. Robinson*, 106 F.3d 610, 611 (4th Cir. 1997); *Fowler v. United States Parole Comm'n*, 94 F.3d 835, 836 (3d Cir.1996); *Evans v. United States Parole Comm'n*, 78 F.3d 262, 264 (7th Cir.1996); *Nordling v. Crabtree*, 1997 WL 94231 at *1 (D.Or.1997). Other courts have considered these arguments in the context of § 2255 motions. *See Billis v. United States*, 83 F.3d 209, 210 (8th Cir.) *cert. denied*, — U.S. —, 117 S.Ct. 252, 136 L.Ed.2d 179 (1996); *Artuso v. Hall*, 74 F.3d 68, 69 (5th Cir.1996); *United States v. Clemmons*, 945 F.Supp. 1519, 1519 (M.D.Fla. 1996).

Arguably, Fultz is not "a prisoner authorized to apply for relief" under § 2255 because he is not "in custody under sentence of a court," but instead is in custody due to the imposition of a new term of special parole subsequent to that imposed by the sentencing court. Indeed, some courts addressing the issue raised by this petition have held the Parole Commission's regulations invalid on the ground, among others, that the special parole statute refers to revocation of special parole "imposed under this section," that is, by a judge as part of a sentence; thus, special parole may only be revoked once and subsequent terms are unlawful. *E.g., Evans*, 78 F.3d at 265 ("The Parole Commission cannot 'impose' a term of special parole any more than it can 'sentence' a defendant to prison.") Moreover, even if Fultz is "a prisoner authorized to apply for relief" under § 2255 and the remedy by motion would be adequate, no useful purpose would be served by requiring him to refile his petition as a motion. Therefore, the Court finds that a petition for writ of habeas corpus as provided for by 28 U.S.C. § 2241 is appropriate in this case.

other circuits have answered it in the affirmative.

## BACKGROUND

Fultz was convicted in this District of conspiracy to possess a controlled substance and possession of a controlled substance with intent to distribute. On April 10, 1978, he was sentenced to serve five years in custody, to be followed by ten years of special parole. He was released on regular parole on October 15, 1981.

On April 16, 1984, Fultz began serving his ten-year special parole term, which was to last until April 15, 1994. On August 3, 1987, the United States Parole Commission found that Fultz had violated the conditions of his special parole by leaving the district without permission, failing to report a change of residence, and failing to submit supervision reports. Fultz was credited with his time spent on special parole and released to special parole on February 21, 1988.

On February 27, 1990, the Parole Commission again found that Fultz had violated the conditions of his special parole, this time by passing a check with insufficient funds and committing petty theft. This time, Fultz did not receive credit for his "street time," including the period from April 16, 1984, to April 22, 1987 (prior to the first revocation), and from February 22, 1988, to December 11, 1989 (between the first and second revocations). Fultz was released on April 11, 1991, to a term of special parole set to end on February 10, 1999.

The Parole Commission on August 24, 1992, found that Fultz had violated the conditions of his special parole a third time. The "Notice of Action" states that the special parole is revoked and that "none of the time spent on special parole shall be credited." Fultz was charged with battery, excessive use of alcohol, violation of a special condition regarding alcohol, and failure to report to his parole officer. He was released again on November 18, 1994, to a term of special parole set to end on March 19, 2000.

On June 10, 1996, the Parole Commission issued a summons for Fultz to appear on charges of violating a special condition, use of dangerous and habit-forming drugs, association with a person having a criminal record, possessing an open container of alcohol, failing to report a change of employment and falsifying supervision reports. The Parole Commission issued a warrant for Fultz's arrest on September 9, 1996. Fultz was arrested on September 29, 1996, and confined at the Metropolitan Correctional Center in San Diego.

## DISCUSSION

Fultz filed the instant petition on October 18, 1996, contending that he is being detained unlawfully because the Parole Commission lacked authority to release him to special parole in 1987 after revoking his special parole and incarcerating him for his first violation. He argues that instead, the Parole Commission had authority only to either incarcerate him for the remainder of his special parole term or release him to regular parole. He contends that in either event, his ten-year sentence would have concluded by now, and that this Court must therefore order his release. The government opposes the petition on the grounds that (1) Fultz has failed to exhaust his administrative remedies and (2) the Parole Commission properly imposed the subsequent terms of special parole.

### A. Exhaustion of Administrative Remedies

The government argues that Fultz has failed to exhaust his administrative remedies because he did not raise this claim in his appeals from the Parole Commission's second and third revocations of his special parole. Fultz acknowledges that he has not challenged the Parole Commission's authority to impose a subsequent term of special parole in his appeals to the Parole Commission. However, he argues that such an appeal would be futile, because the Parole Commission itself promulgated the regulation at issue and has resisted other court challenges to the regulation's validity.

■ Generally, persons in custody must exhaust their administrative remedies prior to bringing a petition for a writ of habeas corpus. *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir.1983). The purpose of this require-

ment is to "aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." *Id.* However, in a "sufficiently extraordinary" case, a court may permit a habeas application by a petitioner who has not exhausted available administrative remedies. *See id.*

■ Several courts have waived the administrative exhaustion requirement for petitioners raising the issue presented here. In *Evans,* it was unclear whether the petitioners had presented their claims to the Parole Commission. *Evans,* 78 F.3d at 264. However, the Parole Commission had not raised the exhaustion requirement, and the Seventh Circuit declined to raise it *sua sponte. Id.* The court also noted that the petitioners' argument did not "depend on factual nuances." *Id.* In any event, "[n]othing the Commission could do, short of repealing 28 C.F.R. § 2.57(c), would aid the petitioners, but the process would require them to spend additional time in prison." *Id.*

In the Ninth Circuit, courts in the District of Oregon and this District have held that petitions similar to this one present extraordinary circumstances. In *Nordling,* Judge Hogan explained, "The fact that the only body of administrative review is the body responsible for drafting and administering the regulations at issue in this proceeding makes this a 'unique circumstance' under which the administrative exhaustion requirement may be waived." *Nordling,* 958 F.Supp. at 500. Similarly, Judge Moskowitz has written that "not only would an appeal by the petitioner to the Appeals Board likely be futile, given the consistent posture of the Commission in litigation across the country, ... but if the petitioner's argument is credited, he has now been detained past the expiration of his six-year term of imprisonment." *Thomas v. Stratman,* No. 96-2094, at 3 (S.D.Cal., Feb.21, 1997).

The instant case presents the same situation. Fultz's petition presents a question of law, namely the validity of 28 C.F.R. § 2.57(c). The determination of this question does not depend on a resolution of factual issues that would be assisted by the development of an administrative record. The detention does not result from an alleged error in the administrative process that the Parole Commission should have the opportunity to correct. It also appears that there is little likelihood of the Parole Commission granting the relief that Fultz seeks, in view of the fact that it promulgated the regulation and has consistently maintained the position that the regulation is lawful. Finally, Fultz would be severely prejudiced were he required to pursue a likely futile appeal before the Parole Commission at this time, when, under the reasoning of the majority of courts, his proper custodial term has expired. Accordingly, the Court finds that Fultz has demonstrated extraordinary circumstances justifying waiver of the administrative exhaustion requirement.

## B. The Special Parole Statute

■ Special parole is a type of post-release supervision that antedates the United States Sentencing Guidelines. The imposition of special parole was mandatory for persons convicted of certain drug offenses. Former 21 U.S.C. § 841(c) provided,

A special parole term ... may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment.

Although the Sentencing Reform Act of 1984 replaced special parole with supervised release, persons sentenced prior to the change are still subject to the previous law. *Evans v. United States Parole Comm'n,* 78 F.3d 262, 263 (7th Cir.1996).

The Seventh Circuit explains the distinctions between regular parole and special parole as follows:

> Three things are "special" about special parole: first, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed, and its length selected, by the district judge rather than by the Parole Commission; third, when special parole is revoked, its full length becomes a term of imprisonment. In other words, "street time" does not count toward completion of special parole; as a rule, however, persons serving parole are returned to prison only for the remainder of their term, for the clock runs continuously.

*Id.*

The Parole Commission interprets former § 841(c) as authorizing it to impose a new term of special parole after revoking a former term and returning the parolee to prison, and has promulgated regulations to that effect. "Should a parolee violate conditions of release during the Special Parole Term he will be subject to revocation on the Special Parole Term ... and subject to reparole or mandatory release under the Special Parole Term." 28 C.F.R. § 2.57(c).

## C. Merits of the Petition

■ Fultz contends that 21 U.S.C. § 841(c) does not provide the Parole Commission with the authority to release a parolee to special parole after it has revoked a term of special parole imposed by the sentencing court and returned the parolee to prison. The Ninth Circuit has not yet addressed this issue. Of the circuit courts that have addressed it, four have held that the Parole Commission lacks this authority, while two have upheld the Parole Commission's authority. In the Ninth Circuit, three district courts have considered the issue, with two granting petitions for writs of habeas corpus and one denying the petition.

In interpreting § 841(c), several courts have pointed to the similarity between the statute's language and that of 18 U.S.C. § 3583(e), which governs revocation of supervised release. Section 3583(e)(3) provides that a court may "revoke a term of supervise release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision." Similarly, § 841(c) provides that when special parole is revoked, "the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment." After nine circuits held that § 3583(e) did not authorize district judges to impose new terms of supervised release after revoking the original terms, Congress amended the statute to permit judges to reinstate supervised release. *See* 18 U.S.C. § 3583(h); *Evans,* 78 F.3d at 265.

In holding that § 841(c) does not permit reinstatement of special parole after revocation, several courts have relied on the previous interpretations of the term "revoke" in § 3583(e). For example, the Fourth Circuit had previously held that the term "revoke" means to "annul" or "extinguish"; this analysis controlled the court's interpretation of § 841(c) and directed the conclusion that special parole, once revoked, cannot be revived. *Robinson,* 106 F.3d at 611; *see Fowler,* 94 F.3d at 838 (Third Circuit had held that in § 3583(e), "revoke" means "rescind"); *Evans,* 78 F.3d at 265 (Seventh Circuit had held that "a term once 'revoked' is extinguished and converted to regular imprisonment"); *Artuso,* 74 F.3d at 70 ("revoke" means "to cancel or rescind"). These courts rejected the government's argument, raised here as well, that the term "revoke" should be interpreted differently in the two statutes. The Fourth Circuit wrote, "The Parole Commission is not able to point to differences between the two types of post-release supervision that would justify employing radically different definitions of the word 'revoke.'" *Robinson,* 106 F.3d at 612. Similarly, the Third Circuit concluded that "[a]lthough 21 U.S.C. § 841(c) and 18 U.S.C. § 3583(e)(3) are not identical, their differences are not so substantive as to compel a different analysis.

Both statutes provide for revocation yet fail to include any authority for the reimposition of the specific sanction that has been revoked." *Fowler*, 94 F.3d at 838 n. 4. Thus, if the Ninth Circuit were one of the circuits that had relied on the meaning of revoke in interpreting § 3583(e)(3), the issue raised by Fultz's petition would present little difficulty.

However, while the Ninth Circuit also held that § 3583(e)(3) did not authorize courts to reimpose supervised release following revocation, it did so prior to the other circuits and relied on the use of the word "or" between the alternatives set forth in § 3583(e). *See United States v. Behnezhad*, 907 F.2d 896, 898 (9th Cir.1990). The court of appeals held that when a person violated conditions of supervised release, the district court was limited to either revoking the supervised release and incarcerating the person (§ 3583(e)(3)) or modifying the length and terms of the supervised release (§ 3583(e)(3)). *Id.* "However, a district court is not permitted to revoke a person's supervised release, order a term of incarceration and then order another term of supervised release." *Id.*

Thus, as the government argues here, the Ninth Circuit's interpretation of § 3583(e) does not control the interpretation of § 841(c), because the latter statute does not set forth alternative courses of action. However, there is no indication that the Ninth Circuit would not concur in the reasoning of the circuits that have held that special parole, once revoked, cannot be reinstated. The government relies on *McQuerry v. United States Parole Comm'n*, 961 F.2d 842 (9th Cir.1992), in which the Ninth Circuit upheld the forfeiture of "street time" upon revocation of special parole. In *McQuerry*, the petitioner's special parole was revoked twice and the Parole Commission credited him with his street time on each occasion. Subsequently, the Parole Commission discovered its error and modified its previous orders to provide for forfeiture of the street time. *Id.* at 843. The Ninth Circuit held that forfeiture of street time under § 841(c) was mandatory and nondiscretionary, and that the Parole Commission had the power to correct the erroneous crediting of street time. *Id.*

The government argues that because the *McQuerry* court held that forfeiture of street time was proper for both revocations, the Ninth Circuit has impliedly approved the imposition of subsequent terms of special parole. This argument is not persuasive. The question presented in *McQuerry* was whether the Parole Commission could belatedly forfeit a special parolee's street time; the court had no occasion to consider the question of whether the second term of special parole was lawfully imposed. Other district courts in this Circuit agree that *McQuerry* does not control. *See Thomas*, No. 96–2094, at 5–6; *Armstrong*, 947 F.Supp. at 1504 n. 3; *Nordling*, 958 F.Supp. at 500.

The government also relies on the decisions of the Eighth Circuit in *Billis* and the District of Columbia Circuit in *United States Parole Comm'n v. Williams*, 54 F.3d 820 (D.C.Cir.1995). The Eight Circuit had previously determined that district courts had authority to impose a subsequent term of supervised release after revocation of an initial term, under § 3583(e); it therefore held in *Billis* that the Parole Commission may impose a subsequent term of special parole. *Billis*, 83 F.3d at 211. In *Williams*, the court focused on the meaning of the phrase "new term of imprisonment." It reasoned that because § 841(c) prescribes the imposition of a new prison term equal to the term of special parole when special parole is revoked, "the only open issue is whether the parolee must serve all of that term behind bars, or may serve the term through a combination of incarceration and special parole." *Id.* at 824. "The important consequence of revocation is that § 841(c) requires the Commission to convert the special parole term into a term of imprisonment. This does not mean that the 'new term of imprisonment' cannot consist of a period of confinement followed by special parole, equal to the original special parole term less the time served in prison." *Id.* Similarly, the government argues in this case that "the Parole Commission has an option inherent in its function, that of using the mechanism of parole in order to carry out its responsibility to determine whether the special parole violator

should serve all or part of his sentence in custody." (Opp. at 13.)

This reasoning has been rejected by the subsequent decisions in *Artuso, Evans, Fowler,* and *Robinson.* In particular, the Seventh Circuit described the *Williams* rationale as creating a "false dichotomy" between imprisonment and re-release to special parole, and ignoring the option of re-release to regular parole. *Evans,* 78 F.3d at 265. The *Evans* court held that a parolee whose special parole is revoked may serve the new term of imprisonment through a combination of incarceration and regular parole, but that the Parole Commission may not reinstate special parole. *Id.* The Court finds this reasoning persuasive. Nothing in § 841(c) precludes a parolee's re-release to regular parole. At the same time, as set forth above, the Court is persuaded that language of the statute does preclude re-release to special parole.

The government here attempts to answer the question posed by the *Evans* court as to why re-release to special parole is superior to regular parole. The government argues that the conclusion of the majority of courts on this issue leads to an anomalous result, in that repeat violators receive "the benefit of the more lenient statutes on credit for time under supervision at their second and successive revocation hearings." (Opp. at 23.) This reasoning was accepted by the District of Oregon in *Nordling,* where the court wrote that the *Evans* interpretation of § 841(c) "would give the Parole Commission the option of requiring the inmate to serve his entire special parole sentence incarcerated or allow[ing] the inmate to be released for some portion thereof on less stringent parole conditions than imposed by the sentencing judge, not as a result of good behavior, but as a result of the inmate's bad behavior while on special parole." *Nordling,* 958 F.Supp. at 501.

This leniency argument begs the question by assuming that what makes special parole stringent is not simply the loss of street time if the parolee violates its conditions, but the potential for *repeated* loss of street time—in other words, that special parole is not "special" unless it can be revoked more than once. The plain language of the statute,

however, makes special parole stringent by providing that if a parolee violates its conditions, he or she returns to prison and receives no credit for time spent on special parole. Fultz, for example, forfeited more than three years of street time when he violated his special parole for the first time in 1987. Nothing in the language of the statute indicates that the Parole Commission has authority to re-impose special parole after revoking it. As one court has observed, "Had Congress intended otherwise, it could have included the following provision as the second-to-last sentence of the provision: 'If a person is required to serve only a part of the new term of imprisonment, the person's re-release shall be under a term of special parole equal to the original term minus the time the person is required to spend in prison.' Congress did not so provide." *Armstrong,* 947 F.Supp. at 1505.

Lastly, the government here argues that the Court should defer to the Parole Commission's interpretation of the statute, as required by *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). However, as the majority of circuits have concluded, the special parole statute is not ambiguous. As the *Evans* court explained,

Section 841(c) said that "the original term of imprisonment shall be increased by the period of the special parole term." An "original" term can be augmented only once; after that, it is not original. What is more, § 841(c) spoke of revoking a "special parole term imposed under this section"— that is, by a judge as part of the sentence—rather than revoking a special parole term created by operation of regulation after release from a prior revocation. The Parole Commission cannot "impose" a term of special parole any more than it can "sentence" a defendant to prison.

*Evans,* 78 F.3d at 265. Thus, the statute is not ambiguous as to the Parole Commission's power to reimpose special parole after revoking it. *Id.* Furthermore, a court need not defer to an agency's interpretation that is "based upon an impermissible construction of the statute." *Fowler,* 94 F.3d at 841. Finally, even if the statute were ambiguous, the

"rule of lenity" would require that courts construe it in favor of the accused. *Staples v. United States*, 511 U.S. 600, 619 n. 17, 114 S.Ct. 1793, 1804 n. 17, 128 L.Ed.2d 608 (1994); *Armstrong*, 947 F.Supp. at 1506.

This Court agrees with the majority of courts, which have concluded that re-release to traditional parole is the option provided for by § 841(c). Accordingly, when Fultz's special parole was revoked on April 22, 1987, his street time was forfeited and his ten-year special parole term was converted to a new term of imprisonment commencing on that date. The Parole Commission had no authority to release him to other than regular parole after the initial revocation. Fultz's parole term therefore must conclude on April 22, 1997, and he is entitled to be released from custody as of that date.[2]

### CONCLUSION

For the foregoing reasons, the Court finds that Fultz has served his full sentence as of April 22, 1997. Therefore, the petition for writ of habeas corpus is hereby **GRANTED**.

**IT IS SO ORDERED.**

---

2. Fultz contends that under 18 U.S.C. § 4164, he was entitled to be released 180 days in advance of his maximum expiration date, or on October 22, 1996. Section 4164, which was repealed in 1984, provided that "[a] prisoner having served his term or terms less good-time deduction shall, upon release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days." In other words, if good-time reductions permit a prisoner's release earlier than the maximum term for which he or she was sentenced, then the person is deemed to be on parole until six months prior to the time that the sentence would have expired without the good-time reductions.

This section would not mandate Fultz's release six months in advance of the completion of his ten-year sentence. In any event, the repeal of the section became effective November 1, 1992, as to persons who committed offenses prior to November 1, 1987; therefore, it is not applicable to Fultz.