**Ruben HERNANDEZ, Petitioner,**

**v.**

**U.S. PAROLE COMMISSION, Respondent.**

**No. 96–3536–RDR.**

United States District Court, D. Kansas.

March 5, 1998.

Thomas M. Dawson, Leavenworth, KS, for Ruben Hernandez.

Mary K. Ramirez, Office of United States Attorney, Topeka, KS, for United States Parole Commission.

### MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

This is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by Hernandez while he was an inmate at the United States Penitentiary, Leavenworth, Kansas. Petitioner challenges actions of the United States Parole Commission (USPC). An order to show cause issued, respondent filed an Answer and Return and petitioner has filed a Reply. Having examined all the materials filed, the court makes the following findings and order.

### FACTS

The pertinent facts of this case are not in dispute. On October 28, 1985, Hernandez was sentenced to a five and one-half year prison term plus a five-year special parole term by the United States District Court for the Northern District of Oklahoma for violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute cocaine. He was paroled from his prison sentence on June 23, 1987. He completed his term of regular parole and commenced his special parole term on December 23, 1990.

Petitioner was arrested on June 21, 1994, for violating the terms of his special parole which was revoked on September 2, 1994. The Commission ordered that he receive no credit for the 43 months spent on special parole and that he serve 12 months in prison prior to reparole.

Hernandez was again released from incarceration on June 20, 1995, on special parole according to the Parole Commission with a full term expiration date of June 19, 1999 (1460 days or four years remaining). He remained in the community under parole su-

pervision for one year and four days. On or around June 24, 1996, a violator warrant was executed, and petitioner's special parole was again revoked. The Commission ordered that Hernandez receive no credit for any of the time spent on special parole and that he serve eight months in prison prior to reparole.

Petitioner was again released on parole designated as special by the Commission on February 24, 1997. After spending eleven months and five days on parole release, petitioner was arrested on January 29, 1998, on state charges and is currently confined in the Osborne County, Kansas jail. On February 5, 1998, a detainer was lodged against him by the U.S. Marshal on behalf of the U.S. Parole Commission presumably for violation of his federal special parole. This detainer is apparently preventing petitioner from making bond on the state charges.

### CLAIM

Hernandez contends that he is being detained unlawfully because the Parole Commission lacks jurisdiction over him. He argues that after the Parole Commission revoked his special parole term for the first time in 1994 and reimprisoned him, that term was extinguished, so that the Commission no longer had any authority to supervise him after his release from prison in June of 1995. He claims that the Commission now has no authority to supervise or place a hold on him and that he is entitled to immediate release from its custody.

Respondent opposes the petition, arguing, in effect, that the Parole Commission has the authority under former 21 U.S.C. § 841(c) and its own regulations to impose repeated, subsequent terms of special parole.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

Generally, administrative remedies must be exhausted before actions of the United States Parole Commission may be challenged in federal court. Petitioner concedes that he has not exhausted, but argues that pursuing administrative review would be futile. Respondent does not invoke the exhaustion rule in defense of this action.

This court finds that the exhaustion prerequisite should be waived in this case. The issue presented for determination is legal and does not depend on the resolution of factual issues through the development of an administrative record. Moreover, this a "sufficiently extraordinary case" in which the administrative agency need not be granted an opportunity to correct errors in its proceedings since the Commission, which would conduct any administrative review, promulgated and administers the regulation at issue and has consistently maintained that it is lawful in litigation across the country. *See Fultz v. Stratman,* 963 F.Supp. 926, 929 (S.D.Cal.1997). Moreover, the record indicates that the Commission was aware during revocation proceedings that petitioner would challenge its authority in court.

### LEGAL ANALYSIS

The controlling statute, former section 841(c) of Title 21 U.S.C., [1981][1], which was in effect at the time of petitioner's sentencing, provides in relevant part:

A special parole term imposed under this section ... may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the new term of imprisonment.

The USPC interprets former § 841(c) as authorizing it to impose a new term of special parole after revoking the original term and returning the parolee to prison. It has codi-

---

1. Special parole was a "short-lived" type of post-release supervision first introduced in 1970 and mandatory for persons convicted of certain drug offenses. The Sentencing Reform Act of 1984 replaced special parole with "supervised release," a "similar institution but administered by the judicial branch." *See Evans v. United States Parole Comm'n,* 78 F.3d 262, 264 (7th Cir.1996). Section 841(c) remains applicable to all crimes committed prior to November 1, 1987. *Caldwell v. Spears,* 973 F.Supp. 406 (S.D.N.Y.1997)(*citing Fowler v. United States Parole Comm'n,* 94 F.3d 835, 837 n. 1 (3d Cir.1996)); *Fultz,* 963 F.Supp. at 929; *Evans,* 78 F.3d at 263.

fied its interpretation of this statute in its regulation, 28 C.F.R. § 2.57(c)[1976], which provides:

> Should a parolee violate conditions of release during the Special Parole Term he will be subject to revocation on the Special Parole Term ... and subject to reparole or mandatory release under the Special Parole Term. [A] special parole term violator whose parole is revoked shall receive no credit for time spent on parole pursuant to 21 U.S.C. 841(c).

There is no question that when petitioner failed to abide by the conditions of his original special parole, the USPC had the authority under former § 841(c) to order revocation and reincarceration for the entirety of the special parole term. By operation of law, upon revocation, petitioner's original term of imprisonment was increased by five years. Moreover, when petitioner's initial special parole term was revoked, § 841(c) expressly required forfeiture of the time spent on special parole. Thus, petitioner could not be given credit for this street time and had a full five years to serve after his arrest for revocation on June 21, 1994. Petitioner does not and could not challenge these actions.

■ Petitioner contends that while the Commission could have imprisoned him for the full new term of five years, it had no power to impose the second or third special parole term. He argues that special parole once revoked, cannot be reinstated and that the Commission lost jurisdiction when it released him on special parole for the second time on June 20, 1995. The initial question presented is whether the United States Parole Commission has authority to repeatedly revoke and impose special parole. If this question is answered in the negative, the court must determine whether or not the Commission lost jurisdiction by releasing Hernandez on the second special parole.

Although the Tenth Circuit has not yet addressed the issue of whether the USPC has authority to impose subsequent terms of special parole, several other circuits have with a resulting split in authority. *Whitney v. Booker*, 962 F.Supp. 1354, 1355 (D.Colo. 1997). Of those circuits, only two, the Eighth and D.C., have held that the Commission has the authority to reinstate special parole following revocation. *See United States Parole Commission v. Williams*, 54 F.3d 820 (D.C.Cir.1995) and *Billis v. United States*, 83 F.3d 209 (8th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 550, 136 L.Ed.2d 433 (1996). The Third, Fourth, Fifth and Seventh Circuits have held that once a special parole term is revoked, none of it remains to be re-imposed after a term of re-incarceration. *See Fowler v. United States Parole Commission*, 94 F.3d 835 (3d Cir.1996); *United States v. Robinson*, 106 F.3d 610 (4th Cir.1997); *Artuso v. Hall*, 74 F.3d 68 (5th Cir.1996); *Evans*, 78 F.3d at 262. The majority of district courts deciding the issue in published opinions have also held that the Parole Commission did not have the power to reimpose special parole after the original special term had been revoked. *See Fultz*, 963 F.Supp. at 926; *Vierra v. United States*, 980 F.Supp. 1372 (D.Hawai'i 1997); *Armstrong v. United States Parole Commission*, 947 F.Supp. 1501 (W.D.Wash.1996); *Caldwell v. Spears*, 973 F.Supp. 406 (S.D.N.Y.1997); *Thomas v. Stratman*, 1997 WL 470307 (D.Wyo. Feb.21, 1997); *Cannon v. United States Parole Commission*, 964 F.Supp. 276 (N.D.Ind.1996); *United States v. Clemmons*, 945 F.Supp. 1519 (M.D.Fla.1996); *but see Nordling v. Crabtree*, 958 F.Supp. 498 (D.Or.1997); *Livingston v. United States Parole Commission*, 974 F.Supp. 1052 (E.D.Mich.1997); *Manso v. Patrick*, 983 F.Supp. 1113 (S.D.Fla.1997). Of particular note is *Whitney v. Booker*, 962 F.Supp. at 1354, since it discusses case law in this circuit.

In holding that § 841(c) does not permit reinstatement of special parole after revocation, several courts relied on prior cases interpreting language in the succeeding statute governing "supervised release," 18 U.S.C. § 3583. Those courts held they were bound by prior decisions in their circuits which controlled their interpretation of § 841(c) and compelled the conclusion that special parole, once revoked, could not be revived. *See Fultz*, 963 F.Supp. at 930, *and cases cited therein.* The Tenth Circuit has construed

§ 3583 and reached the same conclusion[2], that it did not authorize the district courts to impose a subsequent term of supervised release after an offender violated a condition of his first term of supervised release, in *United States v. Rockwell*, 984 F.2d 1112, 1117 (10th Cir.), *cert. denied*, 508 U.S. 966, 113 S.Ct. 2945, 124 L.Ed.2d 693 (1993).[3] As the court in *Whitney*, 962 F.Supp. at 1355, noted, given the Tenth Circuit's interpretation of § 3583 in *Rockwell*, it is likely they would read the analogous statute, 21 U.S.C. § 841(c), as prohibiting the imposition of a subsequent term of special parole.

Having reviewed the record and the cases cited above, this court is convinced that the majority rule is correct. After repeating the argument analogizing § 841(c) to § 3583, the Third and Seventh Circuit courts proceeded to interpret the plain meaning of 841(c). *Fowler*, 94 F.3d at 838–39: *Evans*, 78 F.3d at 264–65. It is this reasoning that the court finds most persuasive. As stated in *Artuso*, 74 F.3d at 71, the plain language of former section 841(c) is our "first and best resort" in the search for congressional intent.

Under former 841(c), the original special parole term was imposed, and its length selected, by the district judge and not the Parole Commission. *Evans*, 78 F.3d at 263. The statute's language implies that the power to impose special parole is conferred on judges alone because the section pertains only to the power of judges to impose a sentence. *Vierra*, 980 F.Supp. at 1380. Nothing in the language of 841(c) grants the Parole Commission authority to re-impose special parole after revoking it. *See Fultz*, 963 F.Supp. at 932. The statute neither vested the district courts or the USPC with authority to impose additional special parole terms nor operated to impose such terms automatically. As the *Evans* court explained:

Section 841(c) said that "the original term of imprisonment shall be increased by the period of the special parole term." An "original" term can be augmented only

once; after that, it is not original. What is more, § 841(c) spoke of revoking a "special parole term imposed under this section"— that is, by a judge as part of the sentence—rather than revoking a special parole term created by operation of regulation after release from a prior revocation. The Parole Commission cannot "impose" a term of special parole any more than it can "sentence" a defendant to prison.

*78 F.3d at 265.*

The effect of former § 841(c) was that it added to a regular prison term—of which a prisoner normally would spend a part in prison and a part on regular parole—a term of special parole to follow that would automatically change into an additional prison term when a person violated its conditions. Thus, § 841(c) envisaged that special parole would be revoked only once. *See Vierra*, 980 F.Supp. at 1379. The original term may be increased only once, and a second special parole cannot involve an increase in the term of imprisonment that is not "original." As one court observed, had "Congress intended otherwise, it could have included the following provision as the second-to-last sentence of the statute: 'If a person is required to serve only a part of the new term of imprisonment, the person's re-release shall be under a term of special parole equal to the original term minus the time the person is required to spend in prison.'" Congress did not so provide. *Armstrong*, 947 F.Supp. at 1505. This court concludes that the language of 841(c) simply does not support the Commission's interpretation in 28 C.F.R. § 2.57(c).

The Government argues that the court is required to defer to the Parole Commission's regulation and its interpretation of 841(c) under *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). However, we agree with the majority of the circuits that the special parole statute is not ambiguous on this particular point. The statute, rather than being ambiguous, clearly does not con-

---

**2.** The Tenth Circuit expressly declined to specify which of two interpretations employed by other circuits it relied upon in reaching the same result.

**3.** Since these decisions, Congress has amended § 3583 to authorize reimposition of supervised release after revocation. 18 U.S.C. § 3583(h).

fer power on the Commission to grant special parole. *Vierra v. United States,* 980 F.Supp. at 1372; *Evans,* 78 F.3d at 265. A court need not defer to an agency's interpretation that is "based upon an impermissible construction of the statute." *Fowler,* 94 F.3d at 841. Moreover, even if the statute were ambiguous, the "rule of lenity" would require that courts construe it in favor of the petitioner. *See Fultz,* 963 F.Supp. at 932–33, *citing Staples v. United States,* 511 U.S. 600, 619 n. 17, 114 S.Ct. 1793, 1804 n. 17, 128 L.Ed.2d 608 (1994); *Armstrong,* 947 F.Supp. at 1506. This court concludes that 28 C.F.R. § 2.57 is invalid insofar as it allows the Commission to impose repeated terms of special parole.

■ Since the court has found that a second term of special parole was not authorized, it must determine the validity of petitioner's claim that the Parole Commission lost jurisdiction by releasing him on subsequent special parole terms. By operation of statute, the term of special parole is replaced by a normal term of imprisonment. Since § 841(c) mandates a new prison term equal to the term of special parole, the question arises whether the parolee must serve all of that term behind bars, or may serve the term through a combination of incarceration and parole. *Id.* at 265. Since, in the language of 841(c), "a person whose special parole term has been revoked may be required to serve all or part of the new term of imprisonment," this court finds that the Parole Commission has express authority to release the person again. The issue in need of resolution is what is the nature of release following special parole revocation and reimprisonment for less than the maximum remaining sentence.

The options for a person serving a special parole violator term have been perceived to be (1) no release, (2) release on special parole or (3) release on regular parole. Petitioner seemingly argues that the only option is no release since release on special parole is not authorized, and that if release is ordered the Commission loses jurisdiction. Respondent argues, along with the D.C. Circuit in *Williams,* that the options are no release or release on special parole. This court agrees with the Seventh Circuit in *Evans,* that these arguments are based on a false dichotomy. They overlook the third option of release on regular parole.

■ This court agrees with the Fifth and Seventh Circuits that § 841(c) itself chooses among these options. After the revocation, the defendant has a single, longer, but ordinary, term of imprisonment. Hernandez started with a five and one-half year term; after revocation, he had a ten and one-half year term, only five years of which had been satisfied. The USPC was free to award parole from that five-year sentence, but there is no statutory basis for calling the parole "special" or applying the forfeiture rule of § 841(c) on a successive return to prison. We hold that the first revocation turns special parole into regular imprisonment, release from which is regular parole. *Accord Evans,* 78 F.3d at 264. Once special parole has been revoked, any subsequent release and revocation is governed by rules for ordinary parole. *Id.,* at 265. While "street time" does not count toward completion of special parole; under the provisions in effect today for federal offenders eligible for regular parole, "street time" credit is given for time spent on parole unless the offender absconds from supervision or commits a new crime while on parole. *See* 18 U.S.C. § 4210. In Hernandez' case, his initial term of special parole was revoked on September 2, 1994, following his arrest on June 21, 1994. Thereafter, there was only a term of imprisonment, and release before its end was regular parole. The term of imprisonment is set at sentencing and by operation of statute. Contrary to the USPC's interpretation, his special parole term was changed by statute into a regular prison term of five years upon revocation, and any time he spent on parole during that five years was time spent on regular parole for which credit must be given unless the revocation behavior included the statutory exceptions.

Accordingly, this court holds that petitioner's special parole was terminated either when he was arrested on June 19, 1994 or when it was revoked on September 2, 1994. The Parole Commission lacked authority to impose another special parole term on petitioner when he was released on June 20, 1995

and on February 24, 1997. Since the revocation of his original special parole, petitioner has been either in prison or on regular parole for which he should have received sentence and "street time" credit.

This petition is granted to the extent that the court holds that the imposition of special parole on June 20, 1995, and February 24, 1997, was not authorized. However, it appears to the court that petitioner is properly in custody of the USPC until approximately June 20, 1999. Thus, the court will not order his release and the petition is denied to that extent. Instead, the matter is remanded to the United States Parole Commission for further proceedings, such as recomputation of sentence credit, consistent with this decision.

IT IS THEREFORE BY THE COURT ORDERED that this matter is remanded to the United States Parole Commission for further proceedings consistent with this order and that this action is dismissed.